IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **JURY DEMANDED** |
| CITY OF CHICAGO, a municipal | ) | |
| Corporation; | ) | |
| WILLIAM WHITLEY, a former City of | ) | |
| Chicago Police Officer, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## COMPLAINT

The Plaintiff, JANE DOE, by and through her attorneys, Richard Dvorak, of

DVORAK LAW OFFICES, LLC, and Gary P. Annes, of ABELS & ANNES, P.C.,

brings her complaint against Defendants City of Chicago and William Whitley,

stating the following:

## Jurisdiction and Venue:

1. The incident occurred on or about in various locations in Chicago, Cook

   County, Illinois.

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42

   U.S.C. § 1983, § 1988 and 28 U.S.C. § 1331, and § 1343(a); the Constitution of

   the United States pendant jurisdiction as provided under 28 U.S.C. § 1367(a).

3.  Venue is proper under 28 U.S.C. § 1391(b)(2) as all parties resigned in this judicial district and all underlying events pertaining to the claims occurred within this District.

**Parties:**

4.  Plaintiff, Jane Doe, is a resident of the City of Chicago, located in Cook County, Illinois.

5.  Defendant City of Chicago is a municipal corporation located in Cook County, Illinois.

6.  Former Chicago Police Officer William Whitley is a federal prisoner, currently housed in Seagoville, Texas, serving a 25-year prison sentence stemming from allegations that are the subject of this complaint.

**Facts:**

7.  William Whitley ("Officer Whitley"), formerly Star 6061, was a Chicago Police Officer, duly appointed and at all times relevant to this complaint employed by Defendant City of Chicago ("City" or "they City") and acting under color of law and in the course and scope of his employment.

8.  Officer Whitley began working as a sworn police officer with the Chicago Police Department in 1991.

9.  Excluding the sustained complaint that stemmed from Officer Whitley's felony conviction related to this case, there were approximately 29 complaints lodged against William Whitley with civilian and/or internal affairs agencies during his time as a Chicago police officer, although this information was

culled from Freedom of Information Act ("FOIA") requests, and thus could be incomplete. It is possible there are more such complaints.

10. Of those 29 complaints obtained through FOIA requests, seven were sustained against Officer Whitley.

11. Only two of those sustained complaints were submitted by civilians; the rest were completed by higher ranking officials within the Chicago Police Department.

12. Thus, there were, at a minimum, 24 civilian complaints against Officer Whitley during his time period, only two of which were sustained.

13. About half of the unsustained complaints against Officer Whitley involved verbal abuse or excessive force against civilians, the majority of which were women. Upon information and belief, this is a highly unusual gender pattern, since most police misconduct complainants are men, one signal that pointed City investigators toward Officer Whitley's misogyny.

14. The two sustained civilian complaints both occurred in 2001 and were only sustained due to an overwhelming amount of evidence of wrongdoing on Officer Whitley's part that made it impossible for the City not to discipline Officer Whitley.

15. In one instance, Officer Whitley was suspended for verbally abusing and repeatedly kicking a detainee in a Chicago Police Department lock-up facility. The physical abuse was so severe that the detainee had to be immediately transported to the hospital. Additionally, three independent witnesses came

forward to support the complainant's story. The FOIA documents indicate this complaint resulted in a suspension, but the FOIA documents do not indicate the length of such a suspension.

16. The second instance in which a civilian complaint was sustained against Officer Whitley resulted from Officer Whitley's failure to write or submit a report after responding to a battery of a 19-year old female complainant who was struck in her head with a metal pipe by her boyfriend. Officer Whitley knew this woman suffered severe domestic violence injuries, and was in need of protection, but Officer Whitley did not arrest this abuser or do anything to protect this woman, in direct violation of the Illinois Domestic Violence Act of 1986 (750 ILCS 60/102).

17. This allegation was easily proven because the complaint occurred the next day, and Officer Whitley coded the job but failed to write the required report. The FOIA documents indicate this complaint resulted in a suspension, but the FOIA documents do not indicate the length of such a suspension.

18. This sustained allegation was typical of several other unsustained complaints by women for failing to protect them and enforce the mandatory provisions of the Act.

19. There were several incidents where female civilian domestic abuse victims came forward to make complaints against Officer Whitley for his refusal to make arrests and protect women who were domestic abuse victims.  Of course, these are only complaints involving domestic violence victims who

actually came forward to report Officer Whitley's misconduct, and any reasonable City investigator looking at this disturbing pattern of Officer Whitley's failure to protect female domestic violence victims would conclude there were probably many more unprotected victims that did not come forward. Of course, when these women did summon the courage to report Officer Whitley, the City investigators, except in one instance, protected Officer Whitley over these domestic violence victims.

20. There was more evidence alerting City investigators to Officer Whitley's on-duty misogyny.

21. For example, the City was also on notice of a particularly alarming instance that should have further clued City investigators into the fact that Officer Whitley was not only a misogynist, but perhaps a sexual predator as well.

22. In one of the unsustained complaints, in 2001, Officer Whitley was accused of leaving 46 "color Polaroids of nude and scantily clad women in a box on the [front] dashboard of his department vehicle."

23. These were apparently home-made Polaroid photographs, presumably taken by Officer Whitley, that should have raised alarm bells within the Chicago Police Department of Officer Whitley's predatory nature toward women.

24. The complaint was un-sustained because, according to the findings of the City investigation, the car was unused for a shift, and therefore the investigators supposedly could not determine with certainty whether someone planted the Polaroids on the dashboard after Officer Whitley's shift,

a highly improbably scenario that equates to a defense of contraband being "planted," which is virtually never accepted as plausible when civilians make this accusation against Chicago police officers. This conclusion also does not explain how Officer Whitley would not have noticed a box of pornography on the front dashboard of his police vehicle.

25. The City of Chicago investigators not only came up with this ridiculous excuse not to hold Officer Whitely responsible for openly displaying a box of homemade pornography in his police vehicle, the investigators also never bothered to investigate the matter to determine whether any of the photographs appeared to be of minors and the investigators never made any attempt to ascertain the identify of these women and/or girls.

26. These investigators knew that had they sustained this allegation or taken the situation seriously, they would have had to do a thorough investigation into the nature of how or why Officer Whitley created this home-made pornography, why such materials were in his police car, and whether any of these women or girls were victims of sexual abuse at the hands of Officer Whitley. A serious investigation into this matter would have no doubt resulted in Officer Whitley's termination and/or criminal charges being brought against Officer Whitley.

27. But, this was not the first time that the City accepted Officer Whitley's excuse that contraband must have been planted in his police vehicle.

28. In 2000, the City investigated Officer Whitley because police found several bags of cannabis under the rear seat of his police vehicle. As with the 2001 incident, there was a shift between when Officer Whitley used the vehicle and when the contraband was found where no officer had used this vehicle.

29. With this incident, while the City investigators did sustain the complaint for failing to properly search his vehicle to not notice the illegal substance, it once again accepted the ridiculous "planting" excuse to not hold Officer Whitley accountable for actually possessing the marijuana, an illegal act that would have likely resulted in his termination and/or criminal charges being lodged against Officer Whitley.

30. These two incidents demonstrate the City of Chicago's long-standing practice of going out of its way not to discipline its officers in any meaningful manner.

31. These two incidents were also typical of the way the City treated Officer Whitley specfically, *i.e.* the City investigated the complaints in a sloppy, incomplete manner, almost never sustaining the complaints, going out of its way to avoid having to seriously discipline him and/or fire him.

32. The City of Chicago's manner of investigating Officer Whitley's misconduct encouraged Officer Whitley to continue to commit police misconduct, including sexual misconduct.

33. The manner in which the City of Chicago investigated Officer Whitley was part of a consistent decades-long pattern of the City of Chicago turning a blind eye to obvious police misconduct.

34. The Defendant City of Chicago has *de facto* widespread customs, policies and practices of failing to investigate, discipline, or otherwise hold accountable its police officers whether on or off duty.

35. The custom of disregarding flagrant and harmful conduct is not just an issue in relation to mishandling of Officer Whitley's complaints and abuse but a department-wide issue that engenders a firm understanding among Chicago Police Officers that they are above the law and can act without fear of consequences.

36. The City also has an entrenched code of silence, and has had one for decades.

37. This code of silence not only calls for officers to not intervene to stop misconduct by other officers, but it also includes City investigators covering up for such misconduct when faced with obvious instances and patterns of abuse.

38. The United States Department of Justice, Civil Rights Division and United States Attorney's Office, Northern District of Illinois in their joint "Investigation of the Chicago Police Department" state that within the Chicago Police Department there are "numerous entrenched, systemic policies and practices that undermine police accountability" and that "The City, police officers, and leadership with CPD and its police officer union acknowledge that a code of silence among Chicago police officers exists".

39. In an interview with "Chicago Tonight" on December 8, 2015 Mayor Rahm Emanuel admitted that there is a code of silence among Chicago police officers.

40. The City has employed and continues to employ hundreds of police officers with long histories of citizen complaints. The City, as a matter of practice and policy, routinely finds the vast majority of citizen complaints against police officers unfounded or unsubstantiated. The City, as a matter of practice and policy, allows its officers to act with impunity, both on and off duty, without the fear of any official consequence.

41. The City's widespread *de facto* custom, practice and policy of failing to investigate, discipline or otherwise hold accountable its police officers, whether on or off duty. The failure to discipline engendered the firm understanding amount Chicago police officers, including Officer Whitely, that Chicago police officers are above the law and can act with impunity, without fear of consequences. As a result, The City's persistent and widespread *de facto* custom, policy and practice was the driving force behind Officer Whitley's conduct.

42. In June of 2015, Officer Whitley knowingly solicited sex from the then 14 year-old Plaintiff.

43. When he did so, Officer Whitley had a reasonable opportunity to observe the Plaintiff to be a minor, and knowingly caused her to engage in commercial

sex acts in violation of Title 18, U.S.C. 1591(a)(1). This is confirmed because Officer Whitley entered a guilty plea to this charge on May 15, 2018.

44. Additionally, Officer Whitley paid the then minor Plaintiff to perform sexual acts on him on at least five occasions between June and September of 2015.

45. The Plaintiff had braces at the time and was obviously underage.

46. Each assault of the Plaintiff took place in Whitley's Chicago apartment.

47. During their encounters, Officer Whitley openly displayed his police status by bragging about it to the Plaintiff. Officer Whitley further displayed that fact by keeping his police uniform hanging up on his bedroom door, wearing a gold chain around his neck that had a gold medallion with a Chicago Police Department logo on it and keeping a department issued and loaded firearm under  pillow while he sexually assaulted the Plaintiff in his bed.

48. On or around July of 2015, Officer Whitley used his cellular smartphone to take several sexually explicit pictures of the Plaintiff in which her genitalia was exposed, an incident that reflects Officer Whitley's updated modus operandi, moving on from taking Polaroids of nude women, as he did in 2001, to taking nude photos on his cell phone.

49. On or around September 2015, the Federal Bureau of Investigations (FBI) began an investigation into Officer Whitley for soliciting sex from the minor Plaintiff as part of a sting operation in an ongoing sex trafficking investigation.

50. An undercover agent met with the Plaintiff and she was taken into custody. Due to her two outstanding Cook County warrants, she agreed to cooperate with the FBI's investigation.

51. Over the course of its investigation, the FBI discovered that Officer Whitley not only sexually assaulted the Plaintiff, but also at least three other minors.

52. On November 1, 2016, Officer Whitley was charged with child pornography and sex trafficking of the Plaintiff and three other minor girls.

53. In or around 2014, another victim of Officer Whitley's described in the federal criminal complaint as "Minor B", told FBI agents that Officer Whitley and a man Officer Whitley described as a fellow Chicago police officer "partner," picked her up while she was walking around the Englewood neighborhood of Chicago. She got in the car with these two Chicago police officers, and Officer Whitley paid her to perform oral sex while his Chicago police officer partner drove the car around.

54. Officer Whitley's brazen sexual assault of a minor, in full view of a fellow Chicago police officer, is typical of the City's entrenched "code of silence," where officers know that they are immune from being informed on by other officers.

55. Another one of the minor girls met Officer Whitley when he saw her outside and offered to give her a ride in his police department vehicle. When he realized she had nowhere to stay, he offered to let her stay at his apartment. Surely, this girl thought she was being saved and protected, at first, but

Officer Whitley waited until they got to his apartment to solicit her for sex, and then completing his sexual assault of this minor victim.

56. On May 15, 2018 Whitley pled guilty to four counts of sex trafficking underage girls.

57. On September 13, 2018, Whitley was sentenced to 25 years in prison, 5 years of supervised release, a fine of $100,000 to be paid to the Crime Victims Fund, and the remainder of his available funds were to be split amongst his victims.

58. A complaint against Officer Whitley for his federal convictions was not filed with the Chicago Police Department until January 14, 2019. The investigation is still pending as of October 2019.

59. The Plaintiff suffered severe mental and emotional damage as a result of the Defendants' actions.

60. The Plaintiff, Jane Doe, turned 18 years old on November 25, 2018.

61. This abuse occurred when the Plaintiff was extremely vulnerable, and Officer Whitley's exploitation of her and his exploitation of his status as a police officer to abuse the Plaintiff and other victims was the result of the City's broken disciplinary system, which not only tolerated Officer Whitley's pervasive pattern of misogyny and abuse, but, in the end, such actions and inactions actually encouraged Officer Whitely to believe that he could get away with anything, including sexually assaulting a minor in full view of another Chicago police officer.

## Count I- SUBSTANTIVE DUE PROCESS,
### 42 U.S.C 1983
(Plaintiff Against Officer Whitley)

62. Each paragraph of this Complaint is fully restated and incorporated herein.

63. Acting within the scope of his employment as a Chicago Police Officer, Officer Whitley violated the minor Plaintiff's substantive due process rights.

64. For the time relevant to the allegations in this complaint, Officer Whitley acted under color of law and within the course and scope of his employment when he repeatedly sexually assaulted the Plaintiff.

65. In taking the actions described above, Officer Whitley, acting within the course and scope of his employment, on numerous occasions caused non-consensual, illegal entry into the Plaintiff's body and therefore violated her substantive due process rights, restrained of her freedom and liberty, and thus were a direct and proximate cause of the Plaintiff's injuries.

## COUNT II –MONELL CLAIM
(Plaintiff Against the City of Chicago)

66. Each paragraph of this Complaint is fully restated and incorporated herein.

67. The Plaintiff had a fundamental Fourteenth Amendment right to be free from unreasonable physical intrusion and sexual assault by law enforcement.

68. Officer Whitley was at all times relevant to this complaint employed by Defendant City of Chicago and was acting within the scope of his employment.

69. Officer Whitley was acting under color of law at all times.

70. Additionally and/or alternatively, the City of Chicago's actions or inactions in this case supply the requisite color of law element to this Section 1983 action.

71. The City's failure to supervise, train, and discipline Officer Whitley allowed him to act with impunity and to use his police power to lure and intimidate his victims without fear of repercussion.

72. At all relevant times, the Defendant City of Chicago had a custom of failing to properly train, supervise and discipline its police officers, Officer Whitley included.

73. At all relevant times, the City of Chicago had in effect policies and procedures, rules, regulations, and general orders regarding the conduct of both on and off duty officers, agents, representatives, and or employees.

74. Defendant City of Chicago had a duty to institute and promulgate procedures, investigations and disciplinary actions that would have protected the Plaintiff, but it failed to do so.

75. Defendant City of Chicago had a duty to institute and maintain a proper early warning system to identify problem officers but failed to do so.

76. The Defendant City of Chicago's failure was the direct cause of Officer Whitley's repeated sexual assaults on the Plaintiff.

77. As a result of the Defendant Officers' conduct the Plaintiff suffered damages, including but not limited to those described above

## COUNT III- STATE LAW CLAIM
### Willful and Wanton Failure to Discipline/Train
### (Plaintiff v. City of Chicago)

14

78. Each paragraph of this Complaint is fully restated and incorporated herein.

79. At all relevant times herein the City of Chicago exercised control over the Chicago Police Department.

80. At all relevant times the Chicago Police Department had in effect policies and procedures, rules, regulations, and general orders regarding the conduct of both on and off duty officers, agents, representatives, and or employees.

81. At all times relevant to the allegations put forth in this complaint, Officer Whitley was employed by the City of Chicago Police Department as a police officer.

82. The City of Chicago had a duty to refrain from willful and wanton conduct with respect to the Plaintiff.

83. With utter indifference and conscious disregard, Defendant City of Chicago failed to discipline or supervise Officer Whitley. Despite his frequent and ongoing pattern of police misconduct in general and misogyny and sexual misconduct specifically, the Defendant, City of Chicago, knew or recklessly disregarded the misconduct committed by Officer Whitley described in this complaint.

### COUNT IV- STATE LAW CLAIM
#### Battery
#### (Plaintiff v. William Whitley and City of Chicago)

84. Each paragraph of this Complaint is fully restated and incorporated herein.

85. As described above, Defendant William Whitley and/or knowingly and/or willfully and wantonly caused the Plaintiff bodily harm without lawful justification.

86. The Plaintiff brings a claim of battery against the City of Chicago under the theory of respondeat superior.

87. As a result of the Defendant Officers' conduct the Plaintiff suffered damages, including but not limited to those described above.

## COUNT V- STATE LAW CLAIM
### Gender Violence Act, 740 ILCS 82/10
### (Plaintiff Against William Whitley and the City of Chicago)

88. Each paragraph of this Complaint is fully restated herein.

89. As described above the Officer Whitley committed gender violence against the Plaintiff in the form of physical intrusions of a sexual nature under coercive conditions that would satisfy the elements of battery under the laws of Illinois.

90. The Plaintiff brings a respondeat superior claim under this statute against Defendant City of Chicago, and also for its own actins or inactions described in this complaint.

## COUNT VI – STATE LAW CLAIM
### Indemnification
### (Plaintiff Against the City of Chicago)

91. Each paragraph of this Complaint is fully restated herein.

92. In committing the acts alleged in the preceding paragraphs, Officer Whitley acted as an agent or employee of the Defendant City of Chicago and was acting in the course and scope of his employment and under color of law.

93. In Illinois, public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

94. The City of Chicago is the indemnifying entity for the actions of the Defendant Officer, who took actions while under color of law and in the course and scope of their employment with the City of Chicago.

## Request for Relief

The Plaintiff respectfully requests that the Court enter judgment in her favor and against the Defendant, award compensatory damages and attorneys' fees on all claims that allow for an award of fees and costs against the Defendants, and to award punitive damages against the Defendant Officer, and grant any other equitable relief this Court deems just and appropriate.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully submitted,

/s/ Richard Dvorak
Richard Dvorak, One of the
Attorneys for the Plaintiff.

Richard Dvorak

Loren Jones
DVORAK LAW OFFICES, LLC
6262 Kingery Highway, Suite 305
Willowbrook, Illinois 60527
Phone: (630)568-3190
Fax: (312) 873-3869
Richard.dvorak@civilrightsdefenders.com
loren.jones@civilrightsdefenders.com

Gary P. Annes
100 N. LaSalle St., Suite 1710
Chicago, Illinois 60602
Phone: (312) 924-7575
Fax: (312) 924-7555
www.abelsannes.com