IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JANE DOE, | ) |
| Plaintiff, | ) Case No. 19-cv-7375 |
| v. | ) Honorable Sharon Johnson Coleman |
| CITY OF CHICAGO, a municipal Corporation, and WILLIAM WHITLEY, | ) Magistrate Young B. Kim |
| Defendants. | ) |

## DEFENDANT CITY OF CHICAGO'S RULE 12(b)(6) MOTION TO DISMISS

Defendant, City of Chicago ("Defendant City"), by and through its attorneys, Mark A. Flessner, Corporation Counsel for the City of Chicago, and pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves this honorable Court to dismiss Plaintiff's complaint against Defendant City, with prejudice. In support thereof, Defendant City states as follows:

### INTRODUCTION

On November 7, 2019, Plaintiff filed her Complaint. [Doc. 1]. Plaintiff brings this suit pursuant to 42 U.S.C. § 1983 alleging that Defendant Whitley and Defendant City violated her Constitutional rights. *Id.* Plaintiff also brings additional claims under Illinois law. *Id.*

Plaintiff's Complaint contains six counts: Count I – Fourteenth Amendment "substantive due process" claim against Defendant Whitley; Count II – *Monell* claim against Defendant City; Count III – "Willful and Wanton Failure to Discipline/Trian" claim against Defendant City under Illinois law; Count IV – Battery claim against Defendants Whitley and City under Illinois law; Count V – Gender Violence Act claim against Defendants Whitley and City under Illinois law; Count VI – Indemnification against Defendant City under Illinois law.

Plaintiff's claims against the City of Chicago should be dismissed for failure to state a claim for seven reasons. First, Plaintiff's *Monell* claim should be dismissed because Plaintiff alleges no underlying constitutional violation committed by Defendant Whitley. Second, Plaintiff's *Monell* claim should be dismissed Defendant City of Chicago has no constitutional duty to protect Plaintiff from private misconduct. Third, Plaintiff's *Monell* claim should be dismissed because Plaintiff's complaint does not contain sufficient allegations to support show that any alleged policy or practice was the "moving force" behind any alleged constitutional injury suffered by Plaintiff. Fourth, Plaintiff's "Willful and Wanton Failure to Discipline/Train" claim should be dismissed because it is barred by the Local Governmental and Governmental Employees Tort Immunity Act. Fifth, Plaintiff's "Willful and Wanton Failure to Discipline/Train" claim should be dismissed because Plaintiff has not adequately alleged proximate causation. Sixth, Plaintiff's Gender Violence Act claim should be dismissed because the City of Chicago is not a "person" that can be sued under the act. And finally, Plaintiff's state law claims should be dismissed because Defendant Whitley was not acting within the scope of his employment at the time he allegedly sexually assaulted Plaintiff.

<u>LEGAL STANDARD</u>

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that, when accepted as true, will state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff's statement of claims requires more than labels, conclusions, or a recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. The Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff, *Chancey v. Suburban Bus Division*

*of Regional Transportation Authority*, 52 F.3d 623, 626-27 (7th Cir. 1995), but may disregard a complaint's "inconceivable" allegations, *Atkins v. City of Chicago*, 631 F.3d 823, 830 (7th Cir. 2011).

ARGUMENT

**I.      Plaintiff's *Monell* claim should be dismissed because Plaintiff has not adequately pled an underlying Constitutional violation.**

It is well settled that a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *See, e.g., City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Matthews v. City of East St. Louis,* 675 F.3d 703, 709 (7th Cir. 2012). Thus, the first question here is whether Plaintiff has plausibly alleged a violation of her constitutional rights. And purely private misconduct cannot violate the Fourteenth Amendment. *See, e.g.*, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936-37 (1982). Here, because Defendant Whitley was not acting under color of law, Plaintiff cannot properly allege an underlying constitutional violation.

A municipal employee's actions "occur under color of state law when they relate to official duties." *Luce v. Town of Campbell*, 872 F.3d 512, 514 (7th Cir. 2017). Acts committed "by a police officer **even while on duty and in uniform are not under color of state law unless they are in some way related to the performance of police duties."** *Gibson v. City of Chicago,* 910 F.2d 1510, 1516 (7th Cir. 1990) (emphasis added) (citing *Briscoe v. LaHue*, 663 F.2d 713, 721 n. 4 (7th Cir.1981)) (further citations omitted). Rather, action is performed under color of law "if it involves a '[m]isuse of power, possessed by virtue of a law and **made possible only because the wrongdoer is clothed with the authority of said law.**" *Estate of Sims ex rel. Sims v. County of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007) (emphasis added) (quoting *Nat'l Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988)). This analysis "depends 'largely on the nature of the specific acts the [municipal actor] performed, rather than on merely whether he was actively assigned at the moment to the performance of [his municipal] duties." *Estate of Sims*, 506 F.3d at 515 (quoting *Pickrel v. City of Springfield, Ill.*, 45 F.3d 1115, 1118 (7th Cir. 1995)); *see also Latuszkin v. City of Chicago*, 250 F.3d 502, 505-06 (7th Cir. 2001) ("The important

consideration in determining whether an officer is acting under color of law is the nature of the specific act performed.").

Here, Plaintiff allege no facts plausibly demonstrating that Defendant Whitley acted under color of state law. [Doc. 1]. Even if Defendant Whitley was on duty during some of the events alleged, Plaintiff has put forth no facts showing that Defendant Whitley was engaged in the performance of his official duties. *Gibson,* 910 F.2d at 1516. Plaintiff alleges that Defendant Whitley "paid the then minor Plaintiff to perform sexual acts on him on at least five occasions between June and September of 2015." [Doc. 1 ¶ 44]. Hiring an minor to perform sexual acts was not related to Defendant Whitley's official duties, and thus he was not acting under color of law during the events alleged in the complaint. *See, e.g. DiDonato v. Panatera,* 19 C 2737, 2019 WL 3934933, at *4 (N.D. Ill. Aug. 20, 2019) ("actions unrelated to a state actor's official duties are not taken under color of state law.") In sum, Plaintiff has failed to plausibly allege that any action by Defendant Whitley was taken under color of state law. In such circumstances, it is "inconceivable" that a municipality may be liable under *Monell. Pitchell*, 13 F.3d at 549 (citing *Heller*, 475 U.S. at 799); *accord, e.g., Mooneyhan v. Hawkins*, 129 F.3d 1264 (table); 1997 WL 685423 at *7 (6th Cir. 1997) ("several circuits have held that in the absence of action taken under color of state law, there is no state action; where there is no state action, there can be no constitutional violation; and without a constitutional violation, a court cannot impose liability upon a municipality under § 1983"). That failure requires dismissal of Plaintiff's *Monell* claim.

**II.     Plaintiff's *Monell* claim should be dismissed because Defendant City of Chicago had no Constitutional duty to protect Plaintiff from harm.**

The Supreme Court has held that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989). The purpose of due process is "to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. Thus, due process "generally confer[s] no affirmative right to

governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* For that reason, "the State cannot be held liable under the [Due Process] Clause for injuries that could have been averted had it chosen to provide" such aid. *Id.* at 196-97. The Court therefore held that "[a]s a general matter . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197. This reflects, among other things, that "the practicalities of day-to-day governance require officials to make difficult allocation choices and tradeoffs and that it is generally not for the courts to compel affirmative steps in one area at the expense of another in weighing competing policy options." *Schroder v. City of Fort Thomas,* 412 F.3d 724, 730 (6th Cir. 2005) (citing *DeShaney,* 489 U.S. at 203; *Collins v. City of Harker Heights,* 503 U.S. 115, 128-29 (1992)).

After *DeShaney*, there are only two circumstances in which the government may be held liable for failing to prevent private misconduct: (1) when the plaintiff was in government custody; or (2) the government engaged in conscience-shocking misconduct that created or increased the danger to a particular, foreseeable plaintiff rather than the general public. *E.g.*, *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827-28 (7th Cir. 2009); *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998). Neither exception applies. Plaintiff was never in custody on the night in question. [Doc. 1-1]. Moreover, Defendant Whitley was acting in a purely private capacity, and the custody exception is inapplicable to a person who "was in no sense a state actor." *DeShaney*, 489 U.S. at 201. Further, Plaintiff does not allege any conscience-shocking conduct by Defendant City of Chicago, let alone any such conduct that created a foreseeable risk to Plaintiff in particular, rather than to the public in general. [Doc. 1-1]. And when, as here, neither *DeShaney* exception applies, local governments "have no constitutional duty to protect individuals from the actions of private citizens," *Latuszkin*, 250 F.3d at 505, so "there [i]s not a legally sufficient basis for [a] jury's verdict" against them under *Monell* for injuries caused by private misconduct, *Waubanascum v. Shawano Cty.*, 416 F.3d 658, 671 (7th Cir. 2005);

*accord, e.g., Fate v. Harper*, 558 F. App'x 250, 253 (3d Cir. 2014); *Doe v. Covington Cty, Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc); *Huffman v. Cty. of Los Angeles*, 147 F.3d 1054, 1061 (9th Cir. 1998); *Van Ort*, 92 F.3d at 835-37; *Piotrowski v. City of Houston*, 237 F.3d 567, 582-85 (5th Cir. 2001).

On this basis, the Seventh Circuit repeatedly has declined to hold municipalities liable for private misconduct absent proof that a *DeShaney* exception applies, even in cases involving misconduct by police officers. In *Latuszkin,* for example, several off-duty police officers held a party in a police station parking lot involving "large amounts of alcohol"; while driving home afterward, an intoxicated officer struck and killed Latuszkin's wife. 250 F.3d at 503. Latuszkin then sued Defendant City of Chicago, claiming that it was liable under *Monell* because its policies "led [its] officers to believe that they were above the law" and therefore were "the foreseeable cause of Mrs. Latuszkin's death." *Id.* at 503-04. The Seventh Circuit rejected that claim because governments "generally have no constitutional duty to protect individuals from the actions of private citizens," and the officer "was engaged in entirely private behavior at the time of the accident." *Id.* at 505-06. And in *Wilson-Trattner v. Campbell,* the Seventh Circuit considered a claim that sheriff's department officials were liable for emboldening a deputy to commit further acts of abuse, resulting in their employee injuring the plaintiff while acting outside the color of law. 863 F.3d 589 (7th Cir. 2017). The Court rejected the claim as "squarely foreclosed by *DeShaney*," explaining that even if the department officials' failure to intervene indirectly emboldened the deputy to mistreat her, that would not distinguish her case from *DeShaney. Id.* Under *DeShaney*, "[m]ere indifference or inaction in the face of private violence cannot support a substantive due process claim." *Id.* at 596. And absent "evidence of an underlying constitutional violation," the plaintiff's *Monell* claim for failure to train necessarily failed. *Id.*

These are but two examples among many. *E.g.*, *Wilson v. Warren County*, 830 F.3d 464, 469-70 (7th Cir. 2016); *D.S. v. East Porter Cty. Sch. Corp.*, 799 F.3d 793, 798-800 (7th Cir. 2015); *King v. East St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007); *Waubanascum v. Shawano Cty.*, 416 F.3d at 664-

71; *Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1022 n.9 (7th Cir. 2003); *Hernandez v. City of Goshen*, 324 F.3d 535, 537-38 (7th Cir. 2003); *Windle v. City of Marion*, 321 F.3d 658, 661-63 (7th Cir. 2003); *Martin v. Shawano-Gresham Sch. Dist.*, 295 F.3d 701, 714 & n.14 (7th Cir. 2002); *Nabozny v. Podlesny*, 92 F.3d 446, 458-61 (7th Cir. 1996). Plaintiff do not allege any facts plausibly showing that either *DeShaney* exception applies here. Therefore, Plaintiff's *Monell* claims against Defendant City of Chicago should be dismissed.

### III.     Plaintiffs' *Monell* claim should be dismissed as it fails to establish the requisite causal connection.

Plaintiff's *Monell* claim must also be dismissed pursuant to Rule 12(b)(6) because it fails to causally connect the alleged practices and customs of Defendant City to the specific conduct alleged against the Defendant Officers.

Not only must the plaintiff show the existence of a widespread practice within the municipality, but the plaintiff must also prove causation. *Young v. Village of Romeoville*, No. 10 C 1737, 2011 WL 1575512, at *1 (N.D. Ill. Apr. 27, 2011) (Feinerman, J.). In order to show causation, a plaintiff must demonstrate that the municipality's deliberate conduct was the "moving force" behind the alleged injury. *Brown*, 520 U.S. at 404; *Johnson v. Cook County*, 526 Fed. Appx. 692, 695, 2013 WL 2005236, at *3 (7th Cir. 2013) ("deliberate action" by the municipality must be the moving force behind the constitutional violation). The first line of inquiry is "whether the complaint alleges a direct causal link between a policy or custom of the [municipality] and the alleged constitutional violations." *Sims*, 506 F.3d at 515; *Mikolon*, 2014 WL 7005257, at *4. In the instance of an alleged widespread practice, it requires evidence of a true municipal policy, not a random event. *Calhoun*, 408 F.3d at 379; *see also Sroga v. Preckwinkle*, No. 14 C 6594, 2016 WL 1043427, at *8 (N.D. Ill. Mar. 16, 2016) (Chang, J.). The plaintiff must show "policymakers were deliberate[ly] indifferen[t] as to [the custom's] known or obvious consequences"; that the municipality was "aware of a substantial risk'…and…'failed to take appropriate steps to protect [plaintiff].'" *Young*, 2011 WL 1575512, at *2; *see also Brown*, 520 U.S.

at 404 (1997) (identifying a policymaker's conduct attributable to that municipality is insufficient to establish a liability for a "policy").

The Seventh Circuit in *Johnson v. Cook County* – a case in which the underlying misconduct was an alleged sexual assault by an on-duty government employee – held that the *Monell* claims were properly dismissed at the pleading stage by looking to the requirement that an alleged policy or practice must have been the "moving force" behind the alleged constitutional violation. *Johnson*, 526 Fed. Appx. at 694 (citing *Brown*, 520 U.S. at 407–08 (1997). In *Johnson*, the plaintiff alleged that Cook County should be liable under *Monell* for various widespread policies or practices, including "encouraging the suppression of complaints of misconduct to cover up inadequacies in the supervision and treatment of detainees." *Id.* The Seventh Circuit agreed with the district court that the plaintiff cannot establish a constitutional violation based on this allegation against Cook County. *Id.* ("Even if Cook County had a history of suppressing complaints . . . that cannot be the moving force behind the sexual assault that occurred here. **The link between the cause alleged and the harm that occurred is much too attenuated**.") (emphasis added).

As the Court of Appeals concluded, "[w]e are not convinced that any set of facts could support Johnson's allegation that Hill sexually assaulted Johnson as a direct result of a 'widespread custom or policy.'" *Id.* In this case, Plaintiff's Complaint suffers from the same deficiency: the connection between the various municipal policies and practices that she alleges exist and the sexual assault that she alleges took place is so weak or remote that the former could not plausibly have caused the latter. For this reason, as well, this Court should dismiss Plaintiff's *Monell* claims.

Plaintiff alleges that: "The City's failure to supervise, train, and discipline Officer Whitley allowed him to act with impunity and to use his police power to lure and intimidate his victims without fear of repercussion." [Doc. 1 ¶ 71]. However, nowhere in Plaintiff's complaint does she allege that Defendant Whitley "used his police power" to lure or intimidate Plaintiff. [Doc. 1]. Plaintiff does not

allege how the alleged policy or practice of the City of Chicago contributed to any alleged violation of Plaintiff's Constitutional rights.

In *Adams v. City of Chicago*, the court made it clear that "a claim that 'past generalized bad police behavior led to future generalize (*sic*) bad police behavior' fails the 'rigorous standards of culpability and causation' required for municipal liability". *Adams*, 2011 WL 12673594, at *7. This is precisely the problem with Plaintiff's allegations in this matter. Plaintiff has failed to allege any factual allegations which suggest that Defendant City maintained a well-settled policy that was the moving force behind Defendant Whitley's conduct in this case beyond the bare assertion that "The City's persistent and widespread de facto custom, policy and practice was the driving force behind Officer Whitley's conduct." [Doc. 1 ¶ 41]. *See, e.g., Travis*, 2012 WL 2565826, at *5-6 (dismissing a *Monell* claim because the plaintiff's allegations were legal elements and not factual allegations which failed to "give enough details" about the alleged policy "to present a story that holds together", including the lack of policymakers awareness of the deprivation and condoning it). Without this factual link, Plaintiff's *Monell* allegations must be dismissed.

**IV.    Plaintiff's state law claims should be dismissed because Defendant Whitley was not acting within the scope of his employment at the time he allegedly sexually assaulted Plaintiff.**

An employer "may **not** be held vicariously liable for an employee's willful and wanton, intentional, or criminal act if it occurred **outside the scope of employment** or was solely in furtherance of the employee's own interests." *Mueller by Math v. Cmty. Consol. Sch. Dist.* 54, 287 Ill. App. 3d 337, 344 (1st Dist. 1997) (emphasis added) (citing *Deloney v. Bd. of Educ. of Thornton Township.*, 281 Ill. App. 3d 775, 783 (1st Dist. 1996)). The general rule in Illinois is that "a municipality may be held liable for the tortious acts of police officers **in the scope of their employment**." *Wolf v. Liberis*, 153 Ill. App. 3d 488, 492 (1st Dist. 1987) (emphasis added). If a municipal employee is **not** acting within the scope of his employment when he commits a tort, the employing municipality **cannot** be held

liable under either a *respondeat superior* or indemnification theory. *See, e.g., Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007); 745 ILCS 10/9-102. Moreover, "an employer is not responsible for acts which are clearly inappropriate to or unforeseeable in the accomplishment of an authorized result. . . . (I)f a deviation is exceedingly marked and unusual, the employee may be found to be **outside the scope of employment as a matter of law.**" *Wright v. City of Danville*, 174 Ill. 2d 391, 405 (1996). (emphasis added).

Under Illinois law, acts of sexual assault are not within the scope of employment as a matter of law. *See, e.g. Deloney*, 281 Ill. App. 3d at 783. "(**S**)**exual assault by its very nature precludes a conclusion that it occurred within the employee's scope of employment** under the doctrine of *respondeat superior.*" *Doe ex rel. Doe v. Lawrence Hall Youth Services*, 2012 IL App (1st) 103758, ¶ 30 (1st Dist. 2012) (emphasis added) (citing *Deloney*, 281 Ill. App. 3d at 775; *Stern v. Ritz Carlton Chicago*, 299 Ill. App. 3d 674, 675 (1st Dist. 1998)).

In *Deloney*, a student at a public school filed suit after a truant officer allegedly sexually assaulted her under the guise of reviewing her enrollment application. *Deloney*, 281 Ill. App. 3d at 775. The student filed suit based on these actions, which she claimed occurred while the officer was employed by the school board and were within the scope of his employment. *Id.* In affirming the grant of summary judgment for the defendant school board, the appellate court held that:

> Here, as noted above, the gravamen of the civil rights action was the alleged sexual misconduct of Deloney. That conduct, **aggravated criminal sexual abuse, by its very nature precludes a conclusion that it was committed within the scope of employment**. While an act may be within the scope of employment although consciously criminal (Restatement (Second) Agency § 231, at 512 (1958)), generally, **acts of sexual assault are outside the scope of employment.**

*Id.* at 783 (emphasis added). The *Deloney* court also held that scope of employment "excludes conduct by an employee that is solely for the benefit of the employee." *Id.* at 784.

Here, as in *Deloney,* Plaintiff claims that Defendant Whitley sexually assaulted her. [Doc. 1]. No court has extended *respondeat superior* liability to apply to sexual assault claims in Illinois. *See, e.g.,*

*Johnson v. Cook County*, 526 Fed. Appx. 692, 697 (7th Cir. 2013) ("counsel conceded at oral argument that we would be the first court interpreting Illinois law to extend the doctrine of *respondeat superior* to a sexual assault claim. We decline to do so.") Under Illinois law, "sexual assault categorically is **never within the scope.**" *Martin v. Milwaukee County*, 904 F.3d 544, 556–57 (7th Cir. 2018) (emphasis added) (citing *Johnson*, 526 Fed. Appx. at 697).

Under the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"), a municipality must indemnify an employee who is liable for a judgment or settlement "while acting within the scope of his employment." 745 ILCS 10/9-102. Similarly, "[u]nder the theory of *respondeat superior,* an employer can be liable for the tort of an employee, but **only for those torts that are committed within the scope of employment.**" *Bagent*, 224 Ill. 2d at 163 (emphasis added). Further, the Illinois Municipal Code provides that:

> In case any injury to the person or property of another is caused by a member of the police department of a municipality having a population of 500,000 or over, **while the member is engaged in the performance of his or her duties as a police officer,** . . . the municipality in whose behalf the member of the municipal police department is **performing his or her duties as a police officer** shall indemnify the police officer for any judgment recovered against him or her as the result of such injury, <u>except where the injury results from the wilful misconduct of the police officer</u>.

65 ILCS 5/1-4-5 (emphasis added).

Because Defendant Whitley was not acting within the scope of his employment at the time of the alleged incident, Plaintiff's willful and wanton failure to train/discipline (Count III), Battery (Count IV), Gender Violence Act (Count V), and Indemnification (Count VI) claims should be dismissed.

**V.    Plaintiff's "Willful and Wanton Failure to Train/Discipline" claim should be dismissed because it is barred by the Local Governmental and Governmental Employees Tort Immunity Act.**

Count III of Plaintiff's Complaint is a "Willful and Wanton Failure to Discipline/Train" [Doc. 1]. At the outset, this claim fails because it is premised on Defendant Whitley's behavior, and, as argued above, he was outside the scope of his employment. The claim also fails because it is barred by the

Illinois Local Governmental and Governmental Employees Tort Immunity Act. Local Governmental and Governmental Employees Tort Immunity Act. 745 ILCS 10/1-101 *et seq*. Section 2-201 of the Act provides as follows:

> Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused.

745 ILCS 10/2-201. Any protections afforded the public employee(s) responsible for training or disciplining Defendant Whitley in this case would be extended to the City because a local public entity is not liable for the injury resulting from an act or omission of its employee where the employee is not liable. *See Spangenberg v. Verner*, 321 Ill. App. 3d 429, 433, 747 N.E.2d 359, 362 (5th Dist. 2001). Section 2-201 of the Act immunizes liability for both negligence and willful and wanton conduct. *Id.* (*citing In re Chicago Flood Litigation*, 176 Ill. 2d 179, 196, 680 N.E.2d 265, 273 (1997)).

Immunity under Section 2-201 of the Act attaches where the alleged injury results from an act or omission involving both the determination of policy and the exercise of discretion. *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 341 (1998). As alleged in Counts III, Plaintiff's claims against the City for the City's alleged failure "to discipline or supervise Officer Whitley" are barred by Section 2-201 of the Illinois Tort Immunity Act as those claims involve determination of policy and the exercise of discretion. Indeed, decisions regarding training are necessary decisions that involve both the determination of policy as well as the exercise of discretion. *See, e.g., Taylor v. City of Chicago*, 1997 WL 51445 *4 (N.D.Ill., February 3, 1997) ("Operation of a police department is a governmental - and therefore discretionary – act . . . Subsidiary acts associated with the operation of a police department include hiring and training decisions. Such decisions are inherently discretionary . . . ").

Further, section 4-102 of the Tort Immunity Act provides the City with immunity from liability for failure to prevent crimes and failure to provide adequate police protection or service:

> Neither a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service, failure to prevent the commission of crimes, failure to detect or solve crimes, and failure to identify or apprehend criminals. This immunity is not waived by a contract for private security service, but cannot be transferred to any non-public entity or employee.

745 ILCS 10/4-102. This immunity is unqualified and therefore bars willful and wanton conduct claims as well as negligence claims. *DeSmet v. Count of Rock Island*, 219 Ill. 2d 497, 515 (Ill. 2006); *Prough v. Madison County*, 2013 IL App. (5th) 110146, paras. 25-26; *See also Ries v. City of Chicago*, 242 Ill.2d 205, 223-24, 950 N.E. 2d 631, 641-43(Ill. 2011).

Accordingly, Count III of Plaintiff's Complaint is barred by the tort immunity statute and should be dismissed.

**VI. Plaintiff's "Willful and Wanton Failure to Train/Discipline" claim should be dismissed because Plaintiff has not adequately pled proximate cause.**

The Illinois Supreme Court has noted that: "No separate and distinct tort exists for willful and wanton conduct. . . . Rather, willful and wanton conduct is regarded as an aggravated form of negligence. . . . A plaintiff must allege and prove the same elements for a willful and wanton cause of action as she does for a negligence action." *Doe v. Coe*, 123521, 2019 WL 2218925, at *12 (Ill. May 23, 2019) (citing *Krywin v. Chicago Transit Auth.*, 238 Ill. 2d 215, 236 (2010)).

For a plaintiff to state a cause of action for negligence in Illinois, "the complaint must allege facts sufficient to establish three elements: (1) the existence of a duty of care owed to the plaintiff by the defendant; (2) a breach of that duty, and (3) an injury proximately caused by that breach." *Guvenoz v. Target Corp.*, 30 N.E.3d 404, 422 (Ill. App. Ct. 1st Dist. 2015) (citations omitted). In this case, Plaintiff alleges that: "The City's failure to supervise, train, and discipline Officer Whitley allowed him to act with impunity and to use his police power to lure and intimidate his victims without fear of repercussion." [Doc. 1 ¶ 71]. However, nowhere in Plaintiff's complaint does she allege that Defendant Whitley "used his police power" to lure or intimidate Plaintiff. [Doc. 1].

In this case, Plaintiff does not allege how a failure to train Defendant Whitley could have possibly led to Defendant Whitley sexually assaulting Plaintiff. Under Illinois law, the proximate causation element "is satisfied when the employee's particular unfitness **rendered the plaintiff's injury foreseeable** to a person of ordinary prudence in the employer's position." *Anicich v. Home Depot U.S.A., Inc.*, 852 F.3d 643, 649 (7th Cir. 2017), as amended (Apr. 13, 2017) (emphasis added) (citations omitted). The connection between any alleged "failure to train" and the sexual assault that Plaintiff alleges took place is so weak or remote that the former could not plausibly have caused the latter. Plaintiff does not allege how her injury was foreseeable based on any alleged failure to train Defendant Whitley.

Further, Plaintiff does not allege how a failure to discipline Defendant Whitley could have proximately caused her injuries. In fact, Plaintiff alleges that Defendant Whitley **was** disciplined for past misconduct. [Doc. 1 ¶ 10]. The alleged link between a failure to adequately discipline Defendant Whitley and the harm that Plaintiff claims she suffered is much too attenuated. As such, Count III of Plaintiff's Complaint should be dismissed.

### VII. Plaintiff's Gender Violence Act claim should be dismissed because the City of Chicago is not a "person" that can be sued under the act.

Count V of Plaintiff's Complaint is a "Gender Violence Act" claim against Defendant Whitley and the City of Chicago

The statute provides as follows:

> Any person who has been subjected to gender-related violence as defined in Section 5 may bring a civil action for damages, injunctive relief, or other appropriate relief against a **person or persons** perpetrating that gender-related violence. For purposes of this Section, "perpetrating" means either **personally committing** the gender-related violence or **personally encouraging or assisting** the act or acts of gender-related violence.

740 ILCS 82/10 (emphasis added).

The City of Chicago is not a "person" that can be sued under the act. *See, e.g.,* Doe v. Lee, 943 F. Supp. 2d 870, 879 (N.D. Ill. 2013) ("Accordingly, the Court holds that the term 'person' as used in the Act means natural persons.") Although the Illinois Appellate Court recently held that it would be "hypothetically possible to sue a legal entity for acting personally under the Act, if some fictional plaintiff were to file a perfectly-worded complaint. . ." the Court also noted that the "dissent's point that legal entities cannot 'personally' commit assault or battery is well taken. . . ." *Gasic v. Marquette Mgmt., Inc.*, 3-17-0756, 2019 WL 2151329, at *3 (Ill. App. Ct. 3d Dist. May 17, 2019).

In this case, Plaintiff has not alleged, and cannot allege, that Defendant City "personally commit[ed]" or "personally encourage[ed] or assist[ed]" the alleged acts of gender-related violence. 740 ILCS 82/10. Further, as previously discussed, Defendant Whitley was acting outside the scope of his employment during the events alleged in the Complaint, and Defendant Whitley's actions cannot be imputed to the City. As such, Plaintiff's Gender Violence Act claim should be dismissed.

WHEREFORE, for the above and foregoing reasons, Defendant City respectfully requests this honorable Court dismiss the claims against Defendant City, with prejudice.

Respectfully Submitted,

/s/ *Kyle A. Rockershousen*
Kyle A. Rockershousen, Assistant Corporation Counsel
Marion Moore, Assistant Corporation Counsel Supervisor
Nicholas Peluso, Assistant Corporation Counsel
City of Chicago - Department of Law
30 N. LaSalle, Suite 900
Chicago, IL 60602
(312) 744-0742
Kyle.Rockershousen@CityofChicago.org