IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 19 CV 7375 |
| v. | ) | |
| | ) | Hon. Judge Sharon Johnson Coleman |
| THE CITY OF CHICAGO, a | ) | Hon. Mag. Judge Young B. Kim |
| municipal corporation and | ) | |
| WILLIAM WHITLEY, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS

The Plaintiff, JANE DOE, by and through her attorneys, DVORAK LAW

OFFICES, LLC, and ABELS & ANNES, P.C., hereby responds in opposition to the

Defendants' Motion to Dismiss for Failure to State a Claim, filed pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure. The Plaintiff requests that this

Honorable Court deny the Defendant City's motion in its entirety. In support of her

position, the Plaintiff states the following:

LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests

the sufficiency of the complaint, not the merits of the case. *Gibson v. City of*

*Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When faced with a motion to dismiss,

a court must examine the challenged complaint and take all well-pled facts in the complaint as true and view them in a light most favorable to the plaintiff. *Camasta v Jos. A. Bank Clothiers, Inc.,* 761 F.3d 732, 736 (7th Cir. 2014). If after doing so, the complaint provides enough factual information to "state a claim to relief that is plausible on its face," and raises a "right to relief above the speculative level," then the complaint meets the pleading requirements, and a Rule 12(b)(6) motion to dismiss must be denied. *Id.* (citing: *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007)). A plaintiff need not plead particularized facts, but the factual allegations in the complaint must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. The facts must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* A complaint need only contain sufficient facts that, when assumed true, "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

<u>ARGUMENT</u>

## A. The Plaintiff alleged sufficient facts to state a *Monell* claim against the Defendant City of Chicago.

To state a claim under *Monell*, a plaintiff must show that: (1) the plaintiff suffered a deprivation of a constitutional right; (2) as a result of either an express policy, a well-settled and widespread custom, or deliberate act of a decision-maker with final policymaking authority; and that (3) the policy, custom, or act caused a constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); see also *Ovadal v. City of Madison*, 416 U.S. 531, 535 (7th Cir. 2005). The policy, practice, or widespread custom must be "the moving force" behind the constitutional

2

injury. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 306 (7th Cir. 2010). Where, as here, the plaintiff alleges that the municipality's policies or customs were the proximate cause of the constitutional injury, the municipality itself is considered the state actor. *Gibson v. City of Chicago*, 910 F.2d 1510, 1519-23 (7th Cir. 1990).

### i. The Plaintiff alleged sufficient facts to demonstrate that she suffered a constitutional violation.

The facts support the first element of the Plaintiff's *Monell* claim, *i.e.*, that she suffered a deprivation of the constitutional right to bodily integrity. *Albright v. Oliver*, 510 U.S. 266, 272 (1994). Serious batteries such as criminal sexual assault and rape are widely recognized as violations of a plaintiff's right to bodily integrity. *Wudtke v. Davel*, 128 F.3d 1057, 1062-63 (7th Cir. 1997); *Alexander v. D'Angelo*, 329 F. 3d 912, 916 (7th Cir. 2013) ("Rape, however, is not only a battery…but a very serious battery, and a rape committed under color of state law is therefore actionable under 42 U.S.C. § 1983 as a deprivation of liberty without due process of law."); see also *Jones v. Wellham*, 104 F.3d 620 at 622, 628 (4th Cir. 1997); *Rogers v. City of Little Rock*, 152 F.3d 790 at 793-96, 798 (8th Cir. 1998). In this case, the minor Plaintiff was raped repeatedly by the Defendant Officer, which violated her constitutional right to bodily integrity.

The City erroneously claims that there cannot be a constitutional injury under *Monell* unless the party accused of the harmful conduct is acting under color of law. The City attempts to support its argument by citing to a case that does not address the *Monell* inquiry. In that case, *Lugar v. Edmondson Oil Co.* 457 U.S. 922,

924-25 (1982), a private creditor invoked a state legal process that allowed him to utilize the clerk of the state and the county sheriff to deprive the plaintiff of his property. *Id.* The plaintiff sought to sue the creditor under 42 U.S.C. § 1983. *Id.* at 925. The Court applied a two-part test to determine whether the creditor could be held liable under an Act designed to protect private citizens from unlawful state action. *Id.* at 934-938. The Court held that the conduct of a private person only constitutes a constitutional violation if it is carried by a person who may fairly be said to be a state actor. *Id.* at 937. Ultimately, the Court concluded that the issue was not one that could be fairly resolved at the pleading stage. *Id.* at 939 (*citing Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722 (1961) ("Only by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance.")

Unlike in *Lugar*, the Plaintiff here seeks relief on the basis of a *Monell* claim against the Defendant City. On a municipal liability claim, the City itself is the state actor and satisfies the color of law element under 42 U.S.C. § 1983. *Garcia v. City of Chicago*, No. 01 C 8945, 2003 U.S. Dist. LEXIS 4577, at *16-17, 2003 WL 1715621 (N.D. Ill. March 20, 2003). Therefore, the City's policy or practice is the alleged cause of the harm. *City of Canton v. Harris*, 489 U.S. 378, 379 (1989); *Monell*, 436 U.S. at 694; *Gibson v. City of Chicago*, 910 F.2d 1510, 1519 (7th Cir. 1990). While the Plaintiff maintains that Officer Whitley was acting under color of law when the Plaintiff's constitutional rights were violated, this is not something she is required to allege to state a successful *Monell* claim, as the above authorities

4

indicate. The Plaintiff need only allege, as she has in her complaint, that the Defendant officer's conduct – sexual assault – implicated her substantive due process interest in bodily integrity and was the result of the Defendant City's harmful and widespread customs (Cmplt. ¶¶12-41, 61).

ii. **The Defendant City's widespread practice or custom of failing to discipline and encouraging a code of silence amongst officers, including its failure to discipline the Defendant Officer, was the "moving force" behind the constitutional violation.**

To state a claim under *Monell,* a plaintiff must allege, not only that the municipality acted culpably by allowing harmful customs to become widespread, but also that the custom was the moving force behind the constitutional deprivation. *Monell,* 436 U.S. at 695. A widespread municipal custom can be the moving force behind a constitutional violation without being the sole reason for the act. *Spearman v. Elizondo*, 230 F. Supp. 3d 888, 892-895 (N.D. Ill. 2016) (finding that even if the defendant officers believed they had a valid warrant to search the Plaintiff's home, the City of Chicago's custom of failing to supervise and/or discipline its officers and it's pervasive code of silence could still be the moving force behind the unlawful entry).

It is well established that there is widespread custom of code of silence within the Chicago Police Department ("CPD"). This code refers to a tendency among officers and officials in the department to deny, ignore, and cover up the abuse of their colleagues. In January 2017, the United States Department of Justice and the United States Attorney's Office released the results of their investigation into the Chicago Police Department. *Investigation of the Chicago Police Department*, U.S.

5

DEPT. OF JUSTICE CIVIL RIGHTS DIV. (Jan.13, 2017). The Department of Justice concluded that the City of Chicago, police officers, and leadership within CPD acknowledged that a code of silence among officers exists and that this code extends to lying and affirmative efforts to conceal evidence: Mayor Rahm Emanuel, Chicago's Police Accountability Task Force, and the president of the Chicago's Police Officer's union have all admitted that there is a custom of code of silence within the Chicago Police Department. *Taylor v. City of Chicago*, No. 17 CV 03642, 2018 U.S. Dist. LEXIS 145105, at *3, 2018 WL 4075402 (N.D. Ill. August 27, 2018). Courts in this District have also acknowledged the existence of a code of silence within CPD. For instance, the court in *Garcia*, agreed that it is sufficient to allege the City has an "unwritten policy and practice in the CPD to protect and shield off-duty police officers who commit violence against citizens, and that because of this institutionalized differential treatment, off-duty officers are encouraged to believe that they can use violence with impunity." *Garcia,* supra, 2003 U.S. Dist. LEXIS 4577, at *20.

Numerous *Monell* complaints specifically alleging that the code of silence within the Chicago Police Department was the moving force behind a constitutional violation have withstood motions to dismiss in this District. *Spearman v. Elizondo,* 230 F.3d 890, 895 (7th Cir. 2000). For example, in *Spearman*, the plaintiff successfully alleged that the officers were emboldened by the Chicago Police Department's code of silence to carry out searches in a reckless manner. In *Maglaya v. Kumiga*, No. 14-CV-3619, 2015 U.S. Dist. LEXIS 101217, at *15, 2015

6

WL 4624884 (N.D. Ill. Aug. 3, 2015), the plaintiff alleged that these practices emboldened officers to illegally seize their dog. In *Obryeka v. City of Chicago,* No. 07-C-2372, 2012 U.S. Dist. LEXIS 22818, *1, 2012 WL 601810 (N.D. Ill. Feb. 23, 2012), the plaintiff brought a *Monell* claim alleging that the customary code of silence was the moving force behind an off-duty officer's physical attack against her. In that case, the defendant officer repeatedly yelled "Chicago Police Department" and "nobody tells me what to do" prior to the attack. *Id.* at 9. At trial, the jury returned a verdict in the Plaintiff's favor and the decision was upheld. *Obryeka v. City of Chicago*, 913 F. Supp. 2d 598, 600-01 (N.D. Ill. 2012).

Like the officer in *Obryeka*, Officer Whitley demonstrated that he had no fear of consequence due to the pervasive code of silence within the City of Chicago. *Id.* He boldly displayed his status as a police officer to the Plaintiff and without any concern of repercussion, picked up victims in his squad car while on duty, and assaulted minors in plain view of at least one other officer. The complaint alleges Officer Whitley was clearly emboldened by the pervasive code of silence within the City. This pervasive code of silence was the moving force that caused Defendant officer's decision to violate the Plaintiff's constitutional rights.

Additionally, the Defendant City's widespread custom of failing to discipline, investigate, or otherwise hold police officers accountable led to the constitutional harm inflicted on the Plaintiff. A municipality is liable under *Monell* for a failure to discipline when "the need for further discipline is so obvious and disciplinary procedures so inadequate as to be likely to result in the violation of constitutional

7

rights" *Sigle v. City of Chicago,* No. 10 C 04618, 2013 U.S. Dist. LEXIS 59155, *29, 2013 WL 1787579 (N.D. Ill. Apr. 25, 2013). A municipality will be held liable if its failure to supervise or the lack of a proper training program was so severe as to reach the level of "gross negligence" or "deliberate indifference" to the deprivation of the plaintiff's constitutional rights. *Lenard v. Argento*, 699 F.2d 874, 885 (7th Cir. 1983). On the surface, it seems that the City has made attempts to address the failure to discipline issue. However, these efforts have been proven on multiple occasions to be "lip service" doing little or nothing to address an acknowledged oversight problem. See *Johnson v. City of Chicago*, No. 05 C 6545, 2014 U.S. Dist. LEXIS 37530, *9-10 (N.D. Ill. June 9, 2009) (finding that the plaintiff adduced sufficient evidence "to suggest that the City's efforts are merely cosmetic and not truly intended to address the alleged widespread practice of failing to investigate and discipline rogue police officers"); see also *Arias v. Allegretti*, No. 05 C 5940, 2008 U.S. Dist. LEXIS 4352, *3-4, 2008 WL 191185 (N.D. Ill. Jan. 22, 2008).

Although it was not necessary, the Plaintiff also set forth Officer Whitley's complaint history to bolster her claim that the City's failure to discipline officers in general, and Officer Whitley in particular, caused him to feel emboldened into committing his sexual misconduct, including on-duty misconduct. In her complaint, the Plaintiff set forth allegations surrounding multiple internal and civilian complaints made against the Defendant Officer, many of which related to gender bias against women and a propensity for sexual misconduct. Cmplt ¶9-31. In one instance, Officer Whitley was accused of leaving Polaroid photos of nude women on

the dashboard of his police vehicle. The complaint was not sustained simply because Officer Whitley denied knowledge of the photos and claimed they were planted. There was no reason to believe the photos belonged to anyone other than Officer Whitley. Nevertheless, the City promptly closed the investigation without even looking into the origin of the photos, or the ages of the women in them. The fact that Officer Whitley never faced any serious repercussions for his transgressions, in face of a ludicrous explanation as to why the box of Polaroids was found in his squad car, caused him to be emboldened and to use his status as a police officer to harm the Plaintiff without fear of consequence.

The Seventh Circuit has held that questions of proximate causation are best left to the jury – not even subject to summary judgment, let alone dismissal at the pleading stage – outside of extreme cases lacking any quantum of causation evidence. *Thomas v. Cook Cnty. Sheriff's Dep't,* 604 F.3d at 303 ("the jury must make a factual determination as to whether the evidence demonstrates that the [City] had a widespread practice that [caused] the alleged constitutional harm."). This is not an extreme case, and we are at the early stages of litigation, before discovery has occurred. The Plaintiff's claims are neither unique nor implausible. Each of these *de facto* policies maintained by the City of Chicago, pervasive enough to have the force and effect of written procedure, were and continue to be maintained with deliberate indifference to the safety of the community. These systematic failings were the moving force behind the violation of the Plaintiff's

9

constitutional rights and therefore, the court should deny the Defendant's request to dismiss the Plaintiff's *Monell* claim on the basis of causation.

     iii.   The City's argument regarding *DeShaney* is irrelevant since the Plaintiff brings forth no *DeShaney* claim.

The City offers extensive arguments regarding *DeShaney*, however, the Plaintiff has no substantive due process *DeShaney* claim. The Plaintiff's substantive due process claim is against Officer Whitley, not the City, and thus this entire argument is a red herring.

## B. The Plaintiff alleged sufficient facts to state a claim that the Defendant officer was acting within the scope and course of his employment when he sexually assaulted the Plaintiff.

Under respondeat superior, an employer may be held liable for the "negligent, willful, malicious or even criminal acts of its employees, when those acts are committed within the scope of employment." *Adames v. Sheahan*, 233 Ill. 2d 276, 298 (2009). Illinois law requires three factors to be satisfied for the doctrine to apply: (1) the conduct is of the kind the employee is employed to perform; (2) the conduct occurs substantially within the authorized time and space limits; and (3) the conduct is actuated, at least in part, by a purpose to serve the employer. *Id.*; see *Doe v. City of Chi.*, 360 F.3d 667, 670 (7th Cir. 2004). The Defendants contend that sexual assault is categorically never within the scope of employment, however, this does not appear to be an issue that has been conclusively decided by the Illinois Supreme Court. The Plaintiff maintains that by boldly displaying his status as a police officer to the Plaintiff and soliciting minor victims while on duty in his

capacity as a police officer, the Defendant was acting withing the course of his employment during the assaults. However, scope of employment is an issue of fact that should not be determined at the pleading stage before any meaningful discovery may be conducted. *Doe v. City of Chi.*, 360 at 672 (the court noted it has warned repeatedly against trying to resolve indemnity before liability); see also *Doe v. Clavijo*, 72 F. Supp. 3d 910, 915 (N.D. Ill. 2014) (declining to resolve the issues of respondeat superior liability and indemnification at the motion to dismiss stage).

The Plaintiff understands the principle that sexual assault by its nature is normally done for personal reasons, not reasons that would benefit the employer, this Court should allow the Plaintiff to make a further factual record in this regard before forever barring such a claim. The City, however, cannot make such a claim regarding the Plaintiff's next state law claim, and instead the City attempts to avoid liability by relying on tort-immunity principles on that count, which will be discussed further below.

## C. The Plaintiff adequately pled facts to show the Defendant City's willful and wanton failure to discipline/train Defendant officer Whitley and/or failure to protect the Plaintiff led to the constitutional violation.

To state a claim of willful and wanton conduct, the Plaintiff is required to allege facts that show the at-fault party breached an existing duty of care when harming the plaintiff. *Floyd v. Rockford Park Dist.*, 355 Ill. App. 3d 695 (Ill. App. 2005). Unlike negligence, willful and wanton conduct evinces a course of action that demonstrates utter indifference to or conscious disregard for the plaintiff's welfare. *Id.* The City has a duty to refrain from retaining an employee who is a threat to

11

the people to whom that employee is exposed. *Bates v. Doria,* Ill. App. 3d 1025, 1030 (1986).

Here, the City retained the Defendant Officer and failed to discipline or investigate him despite numerous internal and civilian complaints that demonstrated his propensity for gender bias and sexual misconduct. Whitley used his status as a police officer to intimidate his victims, including the Plaintiff, on numerous occasions. Cmplt ¶71. By allowing the Defendant Officer to act with impunity, the City willfully and wantonly put the Plaintiff at risk of sexual assault. The harm committed by the Defendant Officers was foreseeable and would have been to any prudent employer. Ostensibly, the City agrees that such a claim is proper, since it relies on immunity principles to avoid liability on this count.

The City relies on Section 2-201 and 4-102 of the Tort Immunity Act for the principle that the City supposedly cannot be liable for acts that involve both discretion and policy. First, the Plaintiff takes issue with the City's argument that Section 2-201 even applies to the City, as the plain language clearly indicates the immunity is for "public employee[s]" and the Plaintiff's claim here is against the entity itself. The City argues that it must necessarily be immune where the employee is not liable, but this count is not based on respondeat superior: it is based on the City's conduct, not those of the officer. See, e.g. *Thomas v. Cook County*, 588 F.3d 445 (7th Cir. 2009) (a municipality can be liable even where an individual employee is not, so long as the verdicts are not irreconcilable).

In any event, even if this section would apply to the City, it is simply too early in this stage of the litigation to resolve this issue, as the policies and/or customs in this case could be deemed ministerial, which is not protected by this immunity section. *Love v. City of Chicago*, 363 F. Supp. 3d 867, 873-74 (N.D. Ill. 2019) (choosing not to follow Thomas, a case cited by the City, which decided the issue at the dismissal stage, as opposed to state cases on this issue, which all came at the summary judgment stage).

The City also invokes Section 102, which does apply to public entities, however, there is nothing in the plain language of that statue that would apply to immunity for an entity's willful and wanton failure to discipline its police officers, as this is distinct from claims for failure to provide police protection or provide services, the subject matter of this section. Moreover, the logic of *Love* would also apply here, as well, and thus this is not a matter that should be decided on a motion to dismiss.

Finally, the City argues the complaint does not sufficiently argue causation, and the Plaintiff refers to her above argument in this regard. Causation was, in fact, sufficiently alleged, and this is normally an issue for the trier of fact.

### D. This Court should not resolve the thorny issue of whether the City can be liable under the GVA at the motion to dismiss stage.

The City acknowledges that Illinois law does leave open the possibility that a corporation is a "person" for purposes of the statute. Given the fact that this is still an open question under Illinois law, this thorny issue is better resolved at the summary judgment stage, as advised by the court in the case cited by the City,

13

*Gasic v. Marquette Mgt.*, 2019 IL App (3d) 170756, ¶ 19 ("For the foregoing reasons, we answer the certified question as follows: Under some circumstances, a legal entity, such as a corporation, can act 'personally' for purposes of giving rise to civil liability under the Act.")

Despite this admission, the City attempts to argue that the City could not possibly personally have sexually assaulted the Plaintiff, which misses the point. If a corporation is, indeed, a "person" under the act, then there is no reason that it cannot be liable based on the traditional methods of holding an entity liable, i.e. its failure to train and discipline, etc. And, thus, in this manner, it is certainly possible for the City to have done actions that proximately caused the Plaintiff's gender-based violence.

## CONCLUSION

WHEREFORE, for the foregoing reasons, the Plaintiff, JANE DOE, respectfully requests that this Honorable Court to deny the Defendant's Motion to Dismiss in its' entirety.

Dated: February 26, 2020

Respectfully Submitted,

/s/ Richard Dvorak
One of the attorneys for the Plaintiff.

Richard Dvorak
Loren V. Jones

Dvorak Law Offices, LLC
6262 Kingery Highway
Willowbrook, IL 60527
P: (630) 568-3190
F: (312) 873-3869
richard.dvorak@civilrightsdefenders.com
loren.jones@civlirightsdefenders.com


Gary P. Annes

CERTIFICATE OF SERVICE

     I, Loren V. Jones, an attorney, certify that on February 26, 2020, I caused the above document to be delivered to counsel of record in the captioned case through this courts electronic filing system.

/s/ Loren V. Jones