IN THE UNITED STATES DISTRICT COURT
NORTHREN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **JANE DOE**, | ) | |
| | ) | Case No. 19-CV-7375 |
| | ) | |
| Plaintiff, | ) | Hon. Judge Sharon Johnson Coleman |
| | ) | Magistrate Judge Young B. Kim |
| v. | ) | |
| | ) | |
| **CITY OF CHICAGO**, a municipal | ) | |
| corporation, and | ) | |
| **WILLIAM WHITLEY,** | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO COMPEL FBI AND U.S. ATTORNEY'S OFFICE TO COMPLY WITH THIRD-PARTY SUBPOENA**

The Plaintiff, JANE DOE, through her counsel, DVORAK LAW OFFICES, LLC and ABEL & ANNES, P.C., hereby submits this motion to enforce the third-party subpoenas issued to the Federal Bureau of Investigations ("FBI"), and the United States Attorney's Office ("USAO"), pursuant to Fed. R. Civ. P. 45, 26; Fed R. Crim. P. 6; and the inherent power of this Court.

**INTRODUCTION**

The Plaintiff alleges that she was sexually assaulted on numerous occasions when she was a minor by Defendant William Whitley, a former Chicago Police Department ("CPD") law enforcement officer. The Plaintiff alleges in her Complaint that the assaults began in June of 2015, when she was 14 years old, and occurred on at least five occasions from June to September of 2015 at a time when she was not only underage, but obviously so (Dkt. 1, ¶¶ 42-45). She alleges this occurred in exchange for money that Defendant Whitley gave her. These occurrences took place at Defendant Whitley's apartment; however, he used his position as a police officer to exploit and intimidate her (Dkt. 1, ¶¶ 44-47). She also alleged in the Complaint that Defendant Whitley

1

sexually assaulted other minors, and that taking nude photos of women and girls was part of a pattern Defendant Whitley had going back to at least 2001, when the CPD discovered a box of 46 color Polaroid photographs of nude and scantily clad women in a box on the dashboard of the marked squad car for which Defendant Whitely was the last person to have control (Dkt. 1, ¶¶ 21-26). Several of those photos appear to depict minors upon review of the photographs that were tendered to the Plaintiff by the City after the filing of the Complaint. The CPD did a cursory investigation of Defendant Whitley, and failed to take any action against him, nor did it make any attempt to learn the identities of these women/girls who were exploited by Defendant Whitley, even though it is obvious the photos were all taken at the same apartment[1], and the box also included a flyer inside for a sex-toy party sponsored by "Tammy and Mother," which included an address where the party had occurred. See **Exhibit A** (CR Number 268653, FCRL000695).

Defendant Whitley's downfall was not any internal investigation by the CPD. Instead, Defendant Whitley was arrested as the result of an FBI sting operation. Defendant Whitley was investigated by the FBI, and he was prosecuted by the USAO. On September 27, 2018, Defendant Whitley entered a guilty plea to sex trafficking of children by force, fraud or coercion, and was sentenced to a term of imprisonment of 25 years in prison. *United States v. Whitley*, 1:16-cr-00719-1 (Whitley Dkt., p. 94). The findings made by the sentencing court included the fact that Defendant Whitley used his cell phone to persuade, induce, entice, coerce or facilitate the travel of a minor to engage in prohibited sexual conduct as to all minors; that he used his "special skill" as a police officer and abused his position as a police officer in committing the offense involving

---

[1] The FBI documents describe Defendant Whitley as being a hoarder. Thus, allowing the Plaintiff access to the photos in the possession of the FBI would allow the Plaintiff to compare the background of the apartments in the photos. This would be a powerful way to demonstrate how easily it would have been for the CPD to tie these photos directly to Defendant Whitely back in 2001 had they merely taken the simple step of going to his home to compare the background of his home with the background of the photos.

Minor D when he picked her up in a police squad car while wearing a police uniform and enticed her into his home where he later sexually assaulted her; that he aided and abetted other sex traffickers; that as a police officer he had a duty to help the minors escape from sexual abuse; and that the abuse of his police power coerced them into continuing in the sex trade and dissuaded them from seeking help from police (Whitley Dkt. 106, pp. 5, 13, 39-40). The proceedings continued in relation to Defendant Whitley's court-ordered restitution, and the last docket entry was on February 5, 2020, when the court entered an order requiring the turnover of his assets to a court-appointed trustee (Whitley Dkt. 111). The Plaintiff was one of four minor victims identified in the Superseding Indictment (she is Minor A) (Whitley Dkt., p. 48). The Plaintiff does not know the identities of the other minors referenced in the Superseding Indictment.

After reaching the age of majority, on November 7, 2019, the Plaintiff filed the instant Complaint against Defendant Whitley and Defendant City of Chicago (Dkt. 1). Defendant Whitley was served at the federal prison in Texas where he is serving his prison sentence, but he did not answer the complaint, and thus a default judgment was entered against him on June 2, 2020 (Dkt. 41). The Plaintiff brought Section 1983 claims for a violation of her rights to substantive due process against Defendant Whitley (Count I) and a *Monell* claim against Defendant City of Chicago (Count II); as well as state claims for willful and wanton failure to discipline/train (Count III), willful and wanton battery (Count IV); a Gender Violence Act claim (Count V); and an indemnification claim (Count VI). Defendant City of Chicago has declined to represent Defendant Whitley, and instead argued that he was not acting under color of law and was not acting within the scope of his employment when he took his actions. On April 6, 2020, this Court denied Defendant City of Chicago's motion to dismiss based on these arguments, except for the state law battery claim (Dkt. 29). The issues of whether Defendant Whitley was acting under color ofk law

and whether he was acting within the course and scope of his employment will be key issues in this case. More specifically, one of the key issues in this case is whether the City can be held responsible for damages to the Plaintiff based, *inter alia*, on its failure to discipline and train Defendant Whitley, and whether such actions are consistent with an overall pattern of the City of Chicago in how it trains and disciplines its officers. As to the color-of-law issue, Judge Johnson Coleman ruled:

> Construing plaintiff's factual allegations as true and all reasonable inferences in her favor, she has sufficiently alleged that Whitley acted under color of state law when he solicited sex from her and sexually assaulted her. In particular, plaintiff alleges that during her encounters with Whitley, he would brag about being a police officer, keep his uniform prominently displayed, wear jewelry displaying the Chicago Police Department ('CPD') logo, and keep his CPD issued firearm nearby. Other color of law allegations in the complaint include that Whitley paid another minor victim for oral sex while his CPD partner drove him around and that Whitley offered to drive another minor girl home in his police department vehicle. Under these facts, Whitley exploited his status as a Chicago police officer to harm plaintiff and other victims. Plaintiff thus has alleged sufficient facts to nudge her substantive due process claim across the line from conceivable to plausible (citations omitted) (Dkt. 29, p. 3).

As to the Plaintiff's *Monell* claim, the Court ruled the Plaintiff additionally alleged a claim based on a "code of silence" theory, which encompasses CPD officers covering up each other's misconduct, and which also includes the City's failure to discipline Whitley, even though he had an extensive history of police misconduct allegations (Dkt. 29, p. 5). Furthermore, as to the Plaintiff's state law failure-to-discipline claim, the Court ruled the Plaintiff adequately stated a claim based on, *inter alia*, her allegations that the City failed to take any action against Defendant Whitley despite his numerous misconduct allegations, that the City was aware of his pattern of misogyny, and had sufficient notice to uncover his pattern of sexual misconduct (Dkt. 29, p. 7).

After the motion to dismiss was denied, the Plaintiff and the City engaged in extensive discovery exchanges. However, other than documents that referenced the FBI investigation, the

City was not in possession of the bulk of the documents and materials regarding the FBI's investigation into Defendant Whitley. Thus, on October 23, 2020, the Plaintiff sent out two subpoenas for records related to this case, along with a rider and a copy of the Complaint. See **Exhibit B** (Subpoena Requests to the FBI and USAO).

In November of 2020, a representative from the FBI reached out to Plaintiff's counsel and indicated she needed to coordinate a response with the USAO, and that the agency needed more time to formulate a response, a request that was granted by Plaintiff's counsel. Plaintiff's counsel engaged in numerous discussions with the FBI and USAO by telephone and email, and he granted additional requests for time to produce certain records. On January 29, 2021, AUSA Souza, speaking for the USAO and the FBI, indicated to Plaintiff's counsel that the agencies would be willing to produce some records, but that a court order was needed, pursuant to the Privacy Act, 5 U.S.C. §522. The Plaintiff submitted this order, which was entered on February 3, 2021. On that same date, AUSA Souza provided certain redacted documents related to the FBI investigation, along with a letter explaining the position of the FBI and the USAO as to why certain materials and information was being withheld. See **Exhibit C** (AUSA Souza Letter and First Produced Documents). On February 10, 2021, Plaintiff's counsel sent AUSA Souza a letter explaining the Plaintiff's position as to why the documents should be produced and not redacted. See **Exhibit D** (Annes Letter). After that letter was sent, Plaintiff's counsel engaged in further telephonic and email exchanges, which resulted in AUSA Souza agreeing to re-produce certain documents, with the identities of the adults and the Plaintiff redacted. On February 23, 2021, these documents were re-produced with the adult witness names and the Plaintiff's name unredacted, although the Government continued to redact the identifying information (such as addresses, dates of birth and telephone numbers) for the adults. See **Exhibit E** (AUSA Souza Letter and Second Produced

Documents). Having exhausted all negotiations, and pursuant to this Court's Order, the Plaintiff now brings this Motion to Compel.

## ARGUMENT

When requesting materials from the Government where, as here, the Government is not a party, a court must balance three factors: (1) the material sought is needed to avoid a possible injustice in another judicial proceeding; (2) the need for disclosure is greater than the need for continued secrecy; and (3) the request must be structured to cover only material so needed. *United States v. Tingle,* 880 F.3d 850, 855 (7th Cir. 2018). Grand jury materials are not exempt from disclosure and can be released if this standard is met. "[A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Douglas Oil of California v. Petro Stops Northwest*, 441 U.S. 211, 223 (1979). Additionally, the fact that there is a protective order in place on a related criminal case also does not prevent disclosure (*Mitchell v. City of Chicago*, 2019 WL 3287844, at *1 (N.D. Ill. July 22, 2019)), so long as the party can demonstrate a "particularized need" for production of the materials. *Tingle*, 880 F.3d at 855.

The Plaintiff can articulate a particularized need for these materials in this case for several reasons. First, the subject matter of the Whitley investigation is the same subject matter of the Plaintiff's Section 1983 lawsuit, and the City of Chicago has only limited documents in this regard. Second, it appears from the redacted disclosures that Defendant Whitley may have been involved in a juvenile prostitution operation alongside other Chicago police officers, which would be highly relevant to the Plaintiff's *Monell* policy and practice claim against the City of Chicago, as well as the disputed issues of whether Defendant Whitley was acting under color of law and in the course and scope of his employment with the City of Chicago at the time of his actions. Third, these

documents reference witness statements and nude photographs and videos that have a strong nexus with the allegations made in the Plaintiff's Complaint. The Plaintiff alleges in her Complaint that the City was on notice as to Defendant Whitley's misogyny through his civilian complaint history, and most specifically, in 2001, the City failed to investigate an incident wherein a box of Polaroids of naked women and girls (many of whom appear to be underage) were found in Defendant Whitley's police vehicle, while it was parked in a police parking lot. The Plaintiff alleged in the Complaint that Defendant Whitley took nude photographs of her, as well, updating his *modus operandi* from Polaroids to cell phone photos (Dkt. 1, ¶ 48).

Particularly relevant are nude photographs and videos taken of the Plaintiff at Defendant Whitley's home during one of the sexual assaults. Photos of the Plaintiff were taken by Defendant Whitley using his cell phone, then sent to the Plaintiff via text to her cell phone. USA_Doe000044, 49. Defendant Whitley also used his cell phone to take a video of a sexual encounter he had with the Plaintiff and showed this video to the woman who was pimping out the Plaintiff. USA_Doe000013. Defendant Whitley was using photos of the Plaintiff to try to "send (sell)" her to at least two Chicago police officers and did the same with photos of another woman to a third Chicago police officer. USA_Doe000014-17. The Plaintiff is not in possession of any photos or videos, as her phone was seized by the Government during the criminal proceedings.

These photographs and videos were key to the operation of this CPD juvenile sex ring and thus these materials are crucial not only to the specifics of the Plaintiff's case, but also Defendant Whitley's involvement in juvenile pimping with other CPD officers. Defendant Whitley served as both a "customer" (also known as a rapist when it involves a juvenile) and a pimp, including the pimping of juveniles, like the Plaintiff. Defendant Whitley accomplished this, in part, by hosting and attending sex parties that involved minors, and the guests of these parties included

7

fellow Chicago police officers. USA_0000Doe15, 16. He also did this through the taking of photos and videos. During his sexual encounters, Defendant Whitley would regularly take sexually explicit photographs and videos of women and underage girls then use these photos or videos to pimp out the girls/women to others, including other Chicago police officers. USA_Doe00009, 14, 15, 18, 26, 34, 35, 65. In fact, according to one witness, Defendant Whitley possessed a photograph of a fellow Chicago police officer named "Ted" having sexual intercourse with a girl who appeared to be 13 or 14 years old. USA_Doe00009.

Although the USAO provided some redacted materials, the Plaintiff seeks additional materials, which can be addressed by the following categories.

Photos/Videos/Social Media Materials

Throughout the materials provided there were numerous references to videos, photographs, and social media posts. The Plaintiff requested production of color copies of the front and back of all these materials. First, these materials are relevant because they could help identify Defendant Whitley's co-conspirators in his sex trafficking activities, including fellow Chicago police officers. For example, photographs of at least three other Chicago police officers who are implicated in Whitley's sex trafficking activities are identified but not produced. USA_00022; USA_00065. Second, these materials would be useful to help the Plaintiff compare the setting and background of the photos to determine whether the photos seized by the Government in this case are of a similar nature to those discovered in Defendant Whitley's police vehicle in 2001. The social media postings are relevant because this evidence would help the Plaintiff establish that Defendant Whitley and other Chicago police officers were involved in a juvenile prostitution ring and engaged in sex parties. Social media posts are the modern-day equivalent of flyers, and, importantly, a flyer was contained within the box of Polaroids of nude and scantily clad

8

women/minor girls found on the dashboard inside Defendant Whitley's squad car. It appears that Defendant Whitley used flyers and social media posts to promote prostitution and sex parties, and thus these materials are highly relevant to the Plaintiff's claims.

Grand Jury Transcripts

The Government provided certain redacted FBI "302s," however, the Plaintiff's also requested grand jury transcripts. It is anticipated these grand jury transcripts would be similar in nature to the "302s" produced in redacted form. However, grand jury transcripts are even more material and useful to the Plaintiff than the agents' notes and would, in the end, require less federal involvement in this case. Statements made to agents in interviews are not made under oath. Additionally, one cannot "prove up" impeachment through showing witnesses the FBI notes and thus it would be necessary to depose and/or call at trial the author of the notes. Conversely, with transcripts, it would be unlikely that their testimony would be needed. Thus, having the grand jury transcripts would be essential for proving up impeachment and/or refreshing the recollection of witnesses who testified at the grand jury.

Recordings of Whitley Interviews

The recordings[2] of the interviews with Defendant Whitley are critical to the Plaintiff's case. In those interviews, Defendant Whitley makes certain statements that can be construed as admissions of guilt as to his involvement in a prostitution ring involving fellow Chicago police officers (USA_Doe000031-37,62-68), but in any event, in this civil proceeding, the entirety of the statements would be admissible as admissions by a party opponent. Defendant Whitley has refused to participate in these proceedings, and thus it is likely he also will not cooperate in being deposed or being forthright with information. Thus, these recordings are essential because they may be the

---

[2] There were two interviews, and one was audio and video recorded. It appears the other interview may have been only an audio recording.

*only* full statements that the Plaintiff will be able to obtain from Defendant Whitley. And, as with the grand jury transcripts, the audio and video recordings can be proved up without calling the agents, thus minimizing the necessity for involving any federal agents in further litigation.

Contact Information for Disclosed Adults

The Government has removed its initial redactions of the names of adults identified in the produced 302s. However, the Government has maintained the redactions of identifying information such as addresses, telephone numbers and dates of birth of these individuals. It will likely become necessary to locate and subpoena many of these individuals to obtain their testimony and the information that they have regarding Whitley's activities and the involvement of other Chicago police officers in those activities. Many of these individuals have common names and identifying and locating the correct individuals would be next to impossible without the identifying information. Furthermore, the Government has not provided any explanation for the withholding of this necessary and vital information.

The Identity of the Other Minor Victims

The Government has produced 302s, and it has taken back its initial name redactions for all adults and for the Plaintiff. However, the Government still refuses to release unredacted documents that reference the identities of the other minor victims. The Plaintiff is not seeking every name referenced on the 302s, however, the Plaintiff is requesting that the names be redacted for the minor victims who gave full statements in this case about Defendant Whitley's sexual assaults and his involvement in a juvenile sex ring involving several Chicago police officers.[3] In

---

[3] The Plaintiff is not limiting the request, though, to only the minors' witness statements. If these same minors are referenced in other interviews, the Plaintiff seeks these as well. For example, Defendant Whitley makes statements that can be reasonably interpreted as admissions that he pimped out minors to others. USA_Doe000062-68. Furthermore, statements by C.J. implicate Defendant Whitley in pimping the Plaintiff out to two different Chicago police officers and C.J. to a third Chicago police officer.

the criminal proceedings and in the Superseding Indictment, the Government identified certain minor victims as Minor A, B, C and D, with the Plaintiff being Minor A. In the disclosures, aside from the Plaintiff's statements, there are five additional minor victim statements, although it is unclear whether these statements reference statements from minor witnesses other than Minors B, C, and D. These statements are referenced in USA _Doe00001-3; USA _Doe00004; USA _Doe00005-8; USA_Doe000021-27; and USA_Doe000028-30.[4] These statements are summaries, but it is possible that their grand jury testimony has additional factual assertions. A review of those statements indicates each minor has relevant information about their sexual assaults by Defendant Whitley, including the facts that he displayed his CPD unform in his apartment during the encounters, wore CPD jewelry, and maintained his loaded CPD issued weapon under his pillow during the assaults.

In addition to the above allegations involving Defendant Whitley, these minors appear to have additional information regarding other Chicago police officers' involvement in this sex trafficking operation. Some of these minors' sexual exploitation was arranged through C.J[5]. USA_Doe00002, 7. C.J. has been described as the "girlfriend" of R.M., who was a friend of Defendant Whitley and (upon information and belief) a fellow Chicago police officer. USA_Doe000032. RM. was arrested but released without charges by the FBI after he drove C.J. and the Plaintiff to the location of a sexual encounter and who himself had various other

---

USA_Doe000014-17. If the minors referred to on this page are minors who gave statements to the FBI, then the Plaintiff seeks that their identity is not only unredacted in their own statements, but in statements made by others as well.

[4] It appears from cross-referencing the facts alleged during Defendant Whitley's sentencing hearing that this a statement from Minor D. Other than this statement, it is not clear which statements refer to Minors B or C, or possibly other minor victims.

[5] Even though she is an adult, for now, the Plaintiff will be referring to those adults involved in the sex ring operation by their initials. The Plaintiff may seek leave to file an amended complaint, adding claims and parties, and the identities of any Defendants will be disclosed at that time.

involvements in the prostitution ring at issue[6]. USA_Doe000015, 16. One of the minors describes being first approached by Defendant Whitley when he picked her up in his police vehicle, on duty, and then took her back to her apartment and raped her, paying her afterward. Another victim explained that Chicago police officers paying for prostitutes appeared to be common. (USA_Doe000014-17). Further, the minor victims described how Defendant Whitley took nude photographs of women, including minors. *Id.* This is important because C.J. told the FBI that Defendant Whitley used photographs he took of the Plaintiff and of C.J. to try to "send (sell)" both of them to other Chicago police officers in exchange for money. *Id.*

Missing 302s

Upon further examination of the materials produced by the Government it appears that several 302s are missing. The factual basis for the serious allegations contained in the Affidavit attached to the Criminal Complaint against Defendant Whitley do not appear in the 302s produced by the Government. Just one example of this discrepancy is with regard to the information provided by Minor B. The Affidavit provides that Minor B stated that on one occasion she was walking with a friend when "WHITLEY pulled up next to Minor B and her friend in a car and asked if they wanted to take a ride with him and 'his partner.' Minor B further stated that 'Based on the way the man spoke and referred to a 'partner,' Minor B believed that WHITLEY might be a police officer.' " See **Exhibit F** (Criminal Complaint and supporting Affidavit) at Affidavit ¶26 (c). This statement appears to confirm an encounter wherein Defendant Whitley and his "partner,"

---

[6] According to Defendant Whitley, he was first introduced to the Plaintiff through C.J., and that he observed R.M., C.J., and the Plaintiff driving in a vehicle on September 19, 2015, the date of the arrest wherein R.M. and C.J. dropped off the Plaintiff for a paid sexual encounter. He also indicated R.M. and C.J. were "girlfriend and boyfriend." USA_Doe000032. However C.J.'s characterization is that Defendant Whitley pimped her out to R.M.. USA_000015. The Plaintiff was 14 at the time, with braces, so there is more than sufficient evidence to allege that R.M. knowingly or recklessly aided or abetted in the sexual trafficking of a minor, *i.e.* the Plaintiff. In fact, R.M. and the Plaintiff had met "a couple of times" prior to the date they were all arrested together, furthering the above allegation. USA_Doe000043.

presumably a Chicago police officer, solicited juveniles while on duty, a highly relevant piece of evidence in this case. None of the 302s produced contain these facts. This leads to the conclusion that the Government has not produced all the 302s or other documents responsive to the subpoenas.

Additionally, several Chicago police officers are implicated in Defendant Whitley's child sex trafficking activities, including one officer who was arrested with Plaintiff after driving the Plaintiff to the prostitution sting operation. However, no 302s of statements of these officers were provided. It is difficult to believe that no effort would have been made to obtain the statements of these officers. The 302s of the statements of the officers should be produced. If the officers refused to give statements and invoked their *Miranda* rights, documentation of this should be produced, as this may be used as an adverse inference during these civil proceedings.

The Government's Position

In its first letter, the Government cited to a litany of federal Rules and statutes for its position that the materials should not be released. The Government cited to certain statutes that prohibit disclosing otherwise responsive materials, primarily 28 C.F.R. §§ 16.21-29 ("Considerations In Determining Whether Production or Disclosure Should Be Made Pursuant to a Demand"); Fed. R. Crim. P. 6 (e) ("The Grand Jury"); 18 U.S.C. 3509(d)(m) ("Child Victims and Child Witness' Rights"); and 18 U.S.C. 5038 ("Use of Juvenile Records"). However, none of these statutes or Rules prohibit such disclosures, but instead allow for disclosure to appropriate parties, especially in cases such as this, where there is both a Privacy Order in place, as well as a Protective Order. One possible exception would be Section 3509, which prohibits the tendering of child pornography. Regarding these materials, they can be made available for inspection to the parties without reproduction, and can be stored for later use by tendering these documents to the court and filing them under seal.

13

In its second letter, the Government cites to three cases in support of its position. However, none of these cases support the position that these materials cannot be disclosed to the parties, subject to the confidentiality orders in place, and subject to redaction and sealing requirements for any public filings. In *Broiler Chicken Antitrust Litig.*, 2020 U.S. Dist. LEXIS 37140, 2020 WL 1046784 (N.D. Ill. March 4, 2020), the court recognized that grand jury materials can be disclosed with a strong showing of a particular need. *Broiler*, 2020 U.S. Dist. LEXIS 37140, at *3. In that case, the need was not met, mainly because the plaintiffs already had access to voluminous records and there was no showing that the requested documents were necessary to litigate the case, as is here. Additionally, in *Broiler*, unlike here, there was an ongoing, wide-ranging grand jury investigation, whereas here the Government only indicted one person, Defendant Whitley, and those proceedings terminated with his guilty plea in September of 2018. In *Ball v. United States Marshal Serv.*, 2021 U.S. Dist. LEXIS 14233, 2021 WL 254070 (U.S.D.C. Jan. 26, 2021), the court barred a *pro se* plaintiff from receiving materials pursuant to a FOIA request. That case, as here, concerned the disclosure of the identities of minors, and the court had no difficulty finding the privacy interests in that case were "substantial" as to prohibit *public* disclosure. *Ball*, 2021 U.S. Dist. LEXIS 14233 at *7-8. However, the Plaintiff is not seeking *public* disclosure; she is seeking disclosure under strict privacy orders. The sealing of documents and the use of redacted names in future filings and transcripts will keep their identities secret from the public, and thus their identities will be known only to the parties in this case. *Ball* is easily distinguishable. Finally, the Government cites *United States v. Weber*, 2020 U.S. Dist. LEXIS 168713, 2020 WL 5531562 (D.S.D. Sept. 15, 2020) for the proposition that the identities of sexual assault victims who are no longer minors also deserve privacy protection, a proposition that the Plaintiff does not contest. In

that case, the only issue was whether the names of former minors should appear in the public record, and the Plaintiff takes no issue with not publicly disclosing their names.

The Factors

The factors suggested by the Seventh Circuit for courts to use weigh heavily in favor of fully disclosing the requested documents, unredacted. First, the material sought is needed to avoid a possible injustice in another judicial proceedings. For the reasons explained above, there is strong and substantial need for the materials sought as they are highly relevant to the Plaintiff's claims and cannot be obtained through other sources, only the Government. Second, the need for disclosure is greater than the need for continued secrecy. While the need is great, the need for secrecy is much less so. Disclosure will in no way compromise any criminal investigation, which has long terminated, and the identities of the minor victims can remain a secret to everyone but the attorneys for the parties, under strict court orders already in place. Finally, the Plaintiffs are not requesting all materials involved in this investigation, but only those categories of documents identified above.

## CONCLUSION

Therefore, the Plaintiff seeks an order from this Court compelling the FBI and the USAO to comply with the Plaintiff's third-party subpoenas.

Respectfully Submitted,

s/ Richard Dvorak
Richard Dvorak,
One of the Attorneys for the Plaintiff.

Richard Dvorak

Loren Jones
DVORAK LAW OFFICES, LLC
6262 Kingery Highway, Suite 305
Willowbrook, IL 60527
(630) 568-3190 (phone)

Gary P. Annes
ABELS & ANNES, P.C.
100 N. LaSalle Street, Suite 170
Chicago, IL 60602
(312) 924-7575 (phone)

## CERTIFICATE OF SERVICE

    The undersigned, an attorney, certifies that on February 26, 2021, he caused the above document to be filed with this Court's electronic filing system and served upon counsel of record and to the FBI and the U.S. Attorney by email to AUSA Abraham Souza Abraham.Souza@usdoj.gov and AUSA Linda Wawzenski Linda.Wawzenski@usdoj.gov

    Respectfully submitted,

    s/ Richard Dvorak
    Richard Dvorak,
    One of the Attorneys for the Plaintiff.