AO 91 (Rev. 11/11) Criminal Complaint                                   AUSA Sarah Streicker (312) 353-1415

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**RECEIVED**

**NOV 01 2016**

UNITED STATES OF AMERICA

v.

WILLIAM WHITLEY,
also known as "Will" and "Willie"

CASE NUMBER:
**UNDER SEAL**

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

16 CR 719

MAGISTRATE JUDGE VALDEZ

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief:

### COUNT ONE

From on or about June 1, 2015 to on or about September 17, 2015, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 1591(a) | in and affecting interstate commerce, did knowingly patronize, solicit, recruit, entice, harbor, transport, provide, obtain, and maintain by any means a person, namely, Minor A, knowing and in reckless disregard of the fact that Minor A had not attained the age of 18 years and would be caused to engage in a commercial sex act. |

### COUNT TWO

In or about July 2015, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 2251(a) | did knowingly use, persuade, induce, and entice a minor, namely, Minor A, to engage in sexually explicit conduct, namely, lascivious exhibition of Minor A's genitals, for the purpose of producing a visual depiction of such conduct, which visual depiction defendant knew and had reason to know would be transported and transmitted using a means and facility of interstate commerce |

Plaintiff's BATES000606

and in and affecting interstate commerce, and which visual depiction was actually transported and transmitted using a means and facility of interstate commerce and in and affecting interstate commerce.

This criminal complaint is based upon these facts:

  X   Continued on the attached sheet.

HELEN DUNN
Special Agent, Federal Bureau of Investigation (FBI)

Sworn to before me and signed in my presence.

Date: November 1, 2016

*Judge's signature*

City and state: Chicago, Illinois

MARIA VALDEZ, U.S. Magistrate Judge
*Printed name and Title*

Plaintiff's BATES000607

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS  ss

## AFFIDAVIT

I, HELEN DUNN, being duly sworn, state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation, and have been so employed for 14 years.  My current responsibilities include the investigation of sex trafficking crimes and crimes against children.

2.      This affidavit is submitted in support of a criminal complaint alleging that WILLIAM WHITLEY, also known as "Will" and "Willie," has violated Title 18, United States Code, Sections 1591(a) and 2251(a).  Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging WHITLEY with sex trafficking of a minor and production of child pornography, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that WHITLEY committed the offenses alleged in the complaint.

3.      This affidavit is based on my personal knowledge, information provided to me by other law enforcement personnel, interviews of witnesses, cellular phone records, my experience and training, and the experience of other agents.

4.      As set forth in more detail below, there is evidence establishing probable cause that WHITLEY, a Chicago Police Officer, engaged in commercial sex acts with

Minor A on multiple occasions in 2015, and took sexually explicit photographs of Minor A and distributed those photographs to Minor A via text message.

**_Recovery of Minor A_**

5.      In 2015, the FBI was investigating allegations that a minor-aged female, Minor A (date of birth xx/xx/2000), was the victim of sex trafficking in Chicago and the surrounding area.

6.      In early September 2015, law enforcement located and reviewed several advertisements for commercial sex acts with Minor A on Backpage.com, which according to the advertisements, were posted on or about September 1, 2015, September 9, 2015, September 11, 2015, and September 14, 2015.   In these advertisements, Minor A is identified by the same nickname, Nickname A.

7.      The September 1, 2015, September 9, 2015, September 11, 2015, and September 14, 2015 Backpage.com advertisements each stated that Minor A could be reached at telephone number 773-xxx-0641 ("Minor A Phone").[1]

8.      On or about September 12, 2015, a law enforcement officer acting in an undercover capacity (the "UC") and purporting to be a "john" seeking commercial sex services in response to the Backpage.com advertisements called Minor A at the Minor

---

[1] As described in this affidavit, law enforcement has identified Minor A as the user of the Minor A Phone based in part upon the following: (1) the phone number was listed for Minor A in the Backpage.com advertisements containing photographs of Minor A and identifying Minor A by the nickname Nickname A; (2) the UC and Minor A communicated over Minor A Phone and agreed to meet at a place and time on or about September 18, 2015, and Minor A appeared at that place and time; (3) when Minor A was taken into custody on or about September 18, 2015, she had in her possession the Minor A Phone and consented to the search of that phone; and (4) WHITLEY had the Minor A Phone saved in his contacts on his Galaxy tablet under the contact name of Nickname A.

Plaintiff's BATES000609

A Phone. The UC had approximately two phone calls with Minor A on or about September 12, 2015, and both of these communications occurred over Minor A Phone. These telephone conversations were not recorded and the descriptions of those conversations contained in this affidavit are based upon reporting from the UC. During the communications between the UC and Minor A on September 12, 2015, they discussed meeting and engaging in commercial sex services. Minor A and the UC also negotiated the price of commercial sex services to be provided by Minor A. Specifically, Minor A and the UC negotiated sex services for the price of $160.

9. During one conversation, Minor A and the UC discussed where to meet for the sex services. Minor A told the UC words to the effect of her "driver is not available," and therefore Minor A would have to take public transportation. The UC and Minor A decided to meet at a train stop in the South Loop of Chicago in the afternoon on September 12, 2015. Officers went to that location at the appointed time, but Minor A did not show up.

10. Between on or about September 16, 2015 and September 17, 2015, the UC exchanged several text messages with Minor A, who was using the Minor A Phone, in order to schedule a meeting. The UC also called the Minor A Phone, but no one answered. A meeting was not scheduled.

11. On or about September 18, 2015, the UC contacted Minor A at the Minor A Phone via text messaging and phone calls. These telephone conversations were not recorded and the descriptions of those conversations contained in this affidavit are based upon reporting from the UC. During these communications, the UC and Minor

3

A again discussed meeting and engaging in commercial sex services, and negotiated commercial sex services for the price of approximately $160. The UC and Minor A arranged to meet on Friday, September 18, 2015, at approximately 4:30 p.m. at a location on West 15th Street in Chicago.

12. . The UC and other law enforcement officers traveled to the meeting location at approximately 4:30 p.m. on September 18, 2015. At that time, the UC observed a black Mercedes four-door sedan stop in front of the agreed upon meeting location on West 15th Street. The UC observed Minor A exit the back passenger's side door. The UC also observed a female, who was later identified as Individual A, seated at the front passenger's side, and a male, who was later identified as Individual B, in the driver's seat. The UC informed law enforcement officers of the description of the vehicle and its passengers, and the law enforcement officers followed the vehicle.

13. The UC then met with Minor A in the agreed upon location in Chicago. The UC identified himself as a police officer and Minor A was then taken into custody due to two outstanding warrants out of Cook County, Illinois, relating to charges of retail theft and aggravated battery. As described below, Minor A agreed to speak with law enforcement, and was kept in juvenile custody after her arrest as a result of her two outstanding warrants.

14. Law enforcement officers performed a traffic stop on the black Mercedes four-door sedan on Canalport and Halsted Street in Chicago. Law enforcement subsequently ran the license plate number of the Mercedes sedan through a law enforcement database which confirmed that the Mercedes was registered to

4

Individual B. Individual A and Individual B were taken into custody and identified as Individual A and Individual B. They were later released without charges.

***WHITLEY Paid Minor A for Sex and Sent Sexually Explicit Photographs of Minor A to Minor A***

15.     Upon her arrest on September 18, 2015, Minor A agreed to cooperate with law enforcement. Minor A was not made any promises in exchange for her cooperation nor was she paid in exchange for her cooperation. The information provided by Minor A to law enforcement has to date proven to be reliable and truthful. Certain of the information Minor A provided has been corroborated by records related to the Minor A Phone including contact lists, text messages, call records, and photographs. Minor A has approximately 6 juvenile arrests, including one for obstructing identification. Minor A has one juvenile adjudication for retail theft.

16.     Law enforcement officers interviewed Minor A on or about the evening of September 18, 2015, as well as on subsequent dates. During these interviews, Minor A had metal braces on her teeth. Minor A stated that she got the braces put on her teeth in approximately June 2014.

17.     During these interviews with law enforcement, Minor A provided, among other information, the following information about WHITLEY:

a.     Minor A stated that she had been engaging in commercial sex services for the last several months. She stated that she saved the phone numbers of her "johns," or commercial sex customers, in her phone with a dollar sign ($) before their names. Minor A stated that one of the individuals who she had sex with in

Plaintiff's BATES000612

exchange for money was a person she knew as "Will" and who law enforcement later identified as WILLIAM WHITLEY, as described below.

b.      Minor A stated that WHITLEY's phone number was saved in her phone under the contact name "$Will."  As set forth below, a subsequent consent search of the Minor A Phone revealed that she had the contact name "$Will" saved in her phone with the phone number 773-xxx-5882 (the "Whitley Phone").[2]

c.      According to Minor A, Minor A met WHITLEY in approximately June 2015.  Minor A was introduced to WHITLEY through Minor A's friend, Individual A.

d.      Minor A stated that Individual A introduced Minor A to WHITLEY by taking Minor A to WHITLEY's apartment building in Chicago.  Once there, Individual A told Minor A which apartment was WHITLEY's and stated words to the effect of WHITLEY would be able to pay, which Minor A understood to mean that WHITLEY had money to pay her for engaging in sex acts.  Minor A then went up to WHITLEY's apartment by herself and met WHITLEY, who paid Minor A for sex.[3]

---

[2] As set forth in this affidavit, law enforcement identified WHITLEY as the user of the Whitley Phone based in part upon the following: (1), subscriber information indicated that the Whitley Phone is subscribed to by WILLIAM WHITLEY at his home address in Chicago, Illinois; (2)  Minor A had the Whitley Phone saved in her contacts as "$Will"; and (3)  on or about October 8, 2015, WHITLEY acknowledged to law enforcement that he was the user of the Whitley Phone.

[3] Minor A was shown a photograph of WILLIAM WHITLEY and identified that photograph as depicting the individual she knew as "Will" who paid her for sex.  Minor A also identified the location of WHITLEY's apartment in Chicago, Illinois. ·

6

e.     Minor A stated that she engaged in commercial sex services with WHITLEY on approximately five occasions, each time at his apartment.  Minor A recalled that the most recent occasion occurred approximately one or two days prior to Minor A's arrest on September 18, 2015.  As set forth below, a subsequent search of the Minor A Phone revealed text messages and call records indicating that Minor A was with WHITLEY on September 17, 2015.

f.     Minor A stated that, on each occasion, WHITLEY paid Minor A to have sex with him.  Minor A stated that WHITLEY paid her between $60 and $150 for sex.  During the most recent occasion that WHITLEY paid Minor A for sex, he paid Minor A approximately $100.  Minor A stated that the money she had on her when she was arrested (approximately $46) was money left over from the $100 that WHITLEY had paid her.

g.     Minor A stated that she and WHITLEY engaged in both oral sex and vaginal sex each time she met him at his apartment in Chicago.  WHITLEY used a condom when they had sex, and Minor A recalled the condoms were Magnum condoms in a gold wrapper.  Minor A stated that the condoms belonged to WHITLEY and that he kept the condoms near his bed.

h.     Minor A stated that she and WHITLEY did not have a regular date on which they met.  Minor A explained that WHITLEY would text Minor A at Minor A Phone when he wanted to have sex with her. Minor A explained that, once she would receive a text message from WHITLEY, Minor A would then typically take public transportation or call a cab or friend to drive her to WHITLEY's apartment,

7

where she would engage in commercial sex with WHITLEY. On the most recent occasion, she stated that WHITLEY wanted her to come over before he left for work that day.

i. Minor A stated that she did not tell WHITLEY her true name. Minor A stated that she told WHITLEY that she was 23 years old. Minor A did not tell WHITLEY her true age, which was 14 years old at the time. Minor A stated that WHITLEY did not ask her anything about her background and did not ask her for identification. Throughout the time that Minor A was with WHITLEY, Minor A had metal braces on her teeth.

j. Minor A stated that she observed Chicago Police Department uniforms hanging on WHITLEY'S bedroom door. Minor A stated that WHITLEY kept a handgun under the pillow of his bed, including while Minor A and WHITLEY engaged in sex acts on the bed. Minor A stated that, initially, WHITLEY did not tell her that he was a police officer. Eventually, however, WHITLEY told Minor A that he was a police officer, and bragged about being a police officer. In addition, Minor A stated that WHITLEY often wore a gold chain around his neck that had gold medallion with a Chicago Police Department logo on it.

k. Minor A stated that WHITLEY took naked photographs of her on his Galaxy cellular phone while they were inside of his apartment. Minor A also recalled that WHITLEY had a Galaxy tablet in his apartment. Minor A stated that WHITLEY sent her via text message some of the naked photographs he took of her. In some of the photographs, Minor A stated that she is posing naked with another

8

Plaintiff's BATES000615

person. Minor A stated that she had some of the naked photos that WHITLEY took of her saved in the "downloads" section of her phone (the Minor A Phone). As described below, a subsequent search of photographs downloaded on the Minor A Phone included photographs of a female, who Minor A identified as herself, without any clothes on posing in sexual positions, including with her genitalia exposed, in WHITLEY's apartment.

l. Minor A stated that she knows several other females who have sex with WHITLEY in exchange for money, including Minor B, who Minor A knew by the nickname Nickname B and law enforcement identified as Minor B, as described below. Minor A stated that Minor B was approximately 16 years old, which she knew because Minor B told Minor A her age.

### *Search of the Minor A Phone*

18. At the time of her arrest on September 18, 2015, Minor A had on her person the Minor A Phone, and Minor A consented in writing to the search of the phone. Law enforcement subsequently searched the Minor A Phone, which revealed evidence of communications with WHITLEY as recently as September 17, 2015, that indicate that Minor A saw WHITLEY that day.

19. More specifically, Minor A had WHITLEY's phone number, 773-xxx-5882, saved in her contacts under the name "$Will." Law enforcement subsequently obtained subscriber information for phone number 773-xxx-5882, which showed that this phone number was registered to WHITLEY at his apartment in Chicago.

Plaintiff's BATES000616

20.     According to the record of text messages on the Minor A Phone, on September 17, 2015, between approximately 11:30 a.m. and 12:46 p.m., WHITLEY, using the Whitley Phone, initiated a series of text messages with Minor A, who was using the Minor A Phone.  Furthermore, the call log on the Minor A Phone reflect that Minor A called WHITLEY multiple times on September 17, 2015.

a.     More specifically, according to the text messages found on the Minor A Phone, at approximately 11:30 a.m. on September 17, 2015, WHITLEY, using the Whitley Phone, sent a text message to Minor A at the Minor A Phone that stated, "Wyd [what you doing]."[4]  In response, at approximately 11:39 a.m., Minor A, using the Minor A Phone, placed an outgoing call to WHITLEY at the Whitley Phone that lasted approximately seven seconds.  Approximately two minutes later, at 11:41 a.m., WHITLEY, using the Whitley Phone, sent a text message to Minor A at the Minor A Phone that stated, "Stop playing with phone. Either talk. Or say stop texting you. But don't play on phone."  At approximately 12:07 p.m., Minor A responded with a text that stated, "I'm just being cautious because lk ppl like to play on your phone."  At approximately 12:10 p.m., WHITLEY, using the Whitley Phone, responded, "Not me. To [sic] grown for that."

---

[4] The transcripts of text messages described in this affidavit remain in draft form; to the extent quotations from the conversations are included, they are preliminary, not final.  The interpretations of certain text messages are set forth herein in brackets.  My understanding and interpretation of the messages is based upon the contents of the messages, and my knowledge derived from this investigation, and my experience and familiarity, and the experience and familiarity of other law enforcement agents, with sex trafficking.

Plaintiff's BATES000617

b.      Approximately one minute later, Minor A, using Minor A Phone, sent a text to WHITLEY at the Whitley Phone, that stated, "Awww ok wassup then." In response, WHITLEY sent two text messages stating, "You already know" and "B4 I gotta work," respectively.  At approximately 12:12 p.m., the Minor A responded by asking, "What time you gotta go [to work] cause im bout to jump in shower now." WHITLEY, using the Whitley Phone, texted back, "2:00p." Minor A then texted back, "Ok in shower now call you when leaving out house."

c.      Approximately thirty minutes later, at approximately 12:45 p.m., WHITLEY, who was using the Whitley Phone, sent a text to Minor A, who was using the Minor A Phone, that stated, "Wya [where you at]."  At approximately 12:46 p.m., the Minor A responded with a text that stated, "Leaving out now."

d.      According to the call log records on the Minor A Phone, between approximately 12:55 p.m. and 1:20 p.m. on September 17, 2015, the Minor A Phone called the Whitley Phone approximately four times. The call records further reflect that these calls each were less than 60 seconds in duration.

21.     In addition, law enforcement's review of the Minor A Phone indicated that Minor A had the telephone number of Individual A saved in the contacts of the Minor A Phone under Individual A's first name.

22.     Law enforcement subsequently obtained toll records from the service provider for the Minor A Phone.  According to these toll records, the Minor A Phone and the Whitley Phone were in contact hundreds of times between on or about July 24, 2015 and September 17, 2015, including the communications on September 17,

Plaintiff's BATES000618

2015 described above. For example, the toll records for the Minor A Phone reflect that, on or about July 24, 2015, the Minor A Phone and the Whitley Phone exchanged more than approximately 50 text messages. In addition, for example, the toll records show that, on or about August 7, 2015, the Minor A Phone and the Whitley Phone exchanged more than approximately 50 text messages and that the Minor A Phone placed two calls to the Whitley Phone (each were less than one minute in duration) and the Whitley Phone placed one call to the Minor A Phone, which was approximately 1 minute and 10 seconds in duration.

23.   Furthermore, law enforcement's review of the Minor A Phone revealed that it contained approximately six photographs depicting either one or two females, both whom were naked and on top of a bed in sexual poses. The faces of the females do not appear to be visible in the photographs. Upon showing these photographs to Minor A, Minor A identified herself in at least some of these photographs. For example, one of the photographs shows Minor A and the other female next to each other on the bed from behind on their hands and knees with their buttocks and genitalia exposed. Another photograph shows Minor A lying on the bed with her legs spread apart and genitalia exposed. Minor A further told law enforcement that these photographs were taken by WHITLEY in WHITLEY's bedroom in his apartment.

24.   The information obtained from the forensic download of the Minor A Phone indicates that these approximately six photographs were saved on or about July 24, 2015, though the source of these photographs is not reflected on the download. The photographs were saved in the "/Internalstorage/GOSMS/download"

Plaintiff's BATES000619

section of the Minor A Phone. As set forth above, toll records show that more than approximately 50 text messages where exchanged between the Minor A Phone and the Whitley Phone on or about July 24, 2015.

25.    Law enforcement's review of the six photographs described above indicates that the items visible in the background of these photographs are consistent with items found in WHITLEY's apartment during the search of his apartment on or about October 8, 2015 (described in more detail below). For example, in one photograph, leopard print bedding which has several different leopard print patterns on it is visible on the left side of the photograph. During the search of WHITLEY's apartment, law enforcement found leopard print bedding that appears to be the same as that in the photograph. In addition, in two of the photographs, a tan, beige, and black bedspread is visible on the right hand side of the photographs. Law enforcement found what appears to be the same tan, beige, and black bedspread in WHITLEY's apartment.

### WHITLEY Paid Minor B for Sex

26.    Following the interviews of Minor A, law enforcement identified as Minor B (DOB: xx/xx/1997) the person who Minor A referred to as Nickname B, a 16-year-old who WHITLEY paid for sex. In or about early 2016, law enforcement interviewed Minor B, who agreed to cooperate with the investigation and was subsequently interviewed on multiple occasions. Minor B was not made any promises

Plaintiff's BATES000620

in exchange for her cooperation nor was she paid in exchange for her cooperation.[5] Minor B provided, among other information, the following information about WHITLEY:

a.      Minor B stated that she ran away from home when she was approximately 15 years old. According to Minor B, when Minor B was approximately 16 years old, she met Individual A. Minor B went to parties at Individual A's house, which were attended by older men. Minor B stated that other young runaways also were at these parties. Minor B stated that the young runaways, including herself, had sex with the older men in exchange for money.

b.      Minor B identified a photograph of WHITLEY as one of the men who she saw at the parties at Individual A's house and who later paid Minor B for sex, as described below. Minor B could not recall WHITLEY's name.

c.      Minor B further stated that Minor B saw WHITLEY on an occasion when she was walking in the Englewood neighborhood of Chicago with a friend. According to Minor B, WHITLEY pulled up next to Minor B and her friend in a car and asked if they wanted to take a ride with him and "his partner." Minor B and her friend agreed and got into WHITLEY's car. Based on the way the man spoke and referred to a "partner," Minor B believed that WHITLEY might be a police officer.

d.      Minor B explained that WHITLEY was in the driver's seat of the car and WHITLEY's partner was sitting in the passenger seat. While they were

---

[5] As an adult, Minor B has no convictions and has been arrested approximately twice, once for assault and once for theft. Minor B has one juvenile adjudication, which was for theft. Minor B has multiple juvenile arrests for theft and violent offenses.

Plaintiff's BATES000621

riding around in the car, WHITLEY paid Minor B approximately $65 in exchange for giving him oral sex.

     e.    Minor B stated that, after this first meeting, WHITLEY became one of her primary commercial sex customers. Minor B recalled that she and WHITLEY met on approximately five occasions, and on each occasion, WHITLEY paid her approximately $60 to $65 to give him oral sex. Minor B explained that she told WHITLEY that her name was Nickname B.

     f.    Minor B stated that, during the time she was engaging in commercial sex acts with WHITLEY, she was approximately 16 years old and was approximately two months away from turning 17 years old. Based upon Minor B's date of birth, this would mean that the contact between Minor B and WHITLEY occurred in approximately 2014. Minor B stated that, as to WHITLEY's age, she believed WHITLEY to be in his 50s. Minor B stated that she did not talk about her age with WHITLEY, but that she believed WHITLEY knew she was young. Minor B explained that WHITLEY likely knew she was young because he saw her at Individual A's house, and that most of the girls at Individual A's house were young runaways. Minor B further stated that, at the time she was engaging in commercial sex acts with WHITLEY, she was inexperienced with commercial sex acts, having only just started engaging in them. Minor B further explained that, the first time WHITLEY paid her for oral sex, he had to guide her during oral sex.

     g.    Minor B recalled communicating with WHITLEY over a social media website. Minor B further stated that, after she had been with WHITLEY for

15

a while, she gave WHITLEY's phone number to her friends so that they could have sex with him for money too.

### Interview of WHITLEY and Search of WHITLEY's Apartment and Electronics

27.     On or about October 7, 2015, a federal magistrate judge issued a warrant to search WHITLEY's apartment in Chicago, Illinois, as well as the Whitley Phone. The search warrant for WHITLEY's apartment was executed on or about October 8, 2015, and WHITLEY voluntarily agreed to be interviewed by law enforcement on that same day.

28.     During the interview with law enforcement, WHITLEY identified 773-xxx-5882 (the Whitley Phone) as his cellular phone number.  WHITLEY stated that he had recently obtained a new phone, but that it had the same phone number as the Whitley Phone.

29.     In addition, WHITLEY acknowledged knowing Minor A (who he referred to as Nickname A) and Individual A. WHITLEY stated that he met Minor A through Individual A.  WHITLEY stated that he did not know Minor A's age. WHITLEY recalled that Minor A had braces on her teeth.  WHITLEY stated that he had sex with Minor A on one occasion in approximately July or August 2015 and gave her some money after they had sex.  WHITLEY also stated that he took photographs of Minor A on his cellular phone (a previous cellular phone with the same phone number as the Whitley Phone) while Minor A was wearing a bra and panties. WHITLEY stated that he sent these photographs to Minor A's cellular phone.

30.     Whitley denied knowing a person by the name of Nickname B.

Plaintiff's BATES000623

31.     Law enforcement subsequently searched the Whitley Phone as well as Samsung Galaxy tablet WHITLEY had in his apartment (the Whitley Tablet). A review of the Whitley Tablet revealed that WHITLEY had the Minor A Phone saved in his contacts (law enforcement did not find the Minor A Phone number saved in the contacts of the Whitley Phone). More specifically, the Minor A Phone number was saved in the Whitley Tablet under the name of Nickname A with the letters "Fre" before it. A search of the Whitley Phone and the Whitley Tablet revealed that WHITLEY had multiple phone numbers saved in his phone with the letters "Fre" either before or after the name. For example, saved in the contacts of the Whitley Phone were phone numbers for contact names including, but not limited to, "fre Bunny," "Fre Brittany Aka Mocha," "Fre Jasmine," and "Fre Star." Based upon law enforcement's review of text messages exchanged between the Whitley Phone and his various contacts with "Fre" in the contact name, the text messages exchanged between WHITLEY and the "Fre" phone numbers are consistent with prostitution, including discussions of price and meeting times.

32.     During the search of WHITLEY's apartment on or about October 8, 2015, in addition to the Whitley Tablet, law enforcement found condoms, empty condom wrappers including a Magnum Trojan brand condom wrapper that was gold in color, and used condoms. Law enforcement also found hanging on a hanger a short-sleeve, blue Chicago Police Department uniform shirt with a name tag on it that said WHITLEY. Furthermore, law enforcement found bedding including leopard print bedding that contained multiple leopard print patterns on it, which appeared to be

Plaintiff's BATES000624

the same leopard print bedding visible in certain of the sexually explicit photographs found on the Minor A Phone described above.  Law enforcement also found a tan, black, and beige colored bedspread, which appeared to be the same bedspread visible in certain of the sexually explicit photographs found on the Minor A Phone described above.

### *Interstate Commerce*

33.     As described above, WHITLEY's conduct affected interstate commerce in that he used a cellular phone in furtherance of the sex trafficking of Minor A and the production and distribution of sexually explicit images of Minor A.  In addition, according to Minor A, WHITLEY used Trojan condoms during commercial sex acts with Minor A.  According to a representative of the company that produces Trojan Magnum brand condoms, such condoms are manufactured outside of the state of Illinois.

18

Plaintiff's BATES000625

### *Conclusion*

34.    Based upon the foregoing, there is probable cause to believe that WHITLEY engaged in the sex trafficking of Minor A, and produced and distributed sexually explicit photographs of Minor A, in violation of Title 18, United States Code, Sections 1591(a) and 2251.

FURTHER AFFIANT SAYETH NOT.

_____
HELEN DUNN
Special    Agent,    Federal    Bureau    of
Investigation

SUBSCRIBED AND SWORN to before me on November 1, 2016.

_____
MARIA VALDEZ
United States Magistrate Judge

19

Plaintiff's BATES000626